550 S.E.2d 864

**The STATE, Respondent,**

v.

**Terry Lee NESBITT, Appellant.**

No. 3359.

Court of Appeals of South Carolina.

Heard Feb. 5, 2001
Decided June 25, 2001

Assistant Appellate Defender Aileen P. Clare, of SC Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Robert E. Bogan and Senior Assistant Attorney General Charles H. Richardson, all of Columbia; and Solicitor Holman C. Gossett, of Spartanburg, for respondent.

SHULER, J.:

Terry Lee Nesbitt appeals from his conviction for attempted armed robbery, asserting the trial court erred in denying his motion for a directed verdict. We affirm.

## FACTS

In the early morning hours of June 10, 1998, Lawrence Brockman, an employee of the Fast Stop convenience store, was taking gas pump readings when he was approached by a man inquiring what time the store would close. After Brockman explained that he was in the process of closing the store, the man turned and walked away. Brockman later described him as a black male approximately five feet, nine inches tall.

Brockman then re-entered the store and went back behind the counter to the register. As Brockman looked up, he saw a man at the front door wearing a mask or goggles and waving a gun. The man did not enter the store, nor did he point the gun at anyone inside the store. Rather, Brockman testified he stopped at the door for approximately two seconds, then turned and fled. In his description to the police, Brockman stated only that the perpetrator was a black male.

Annie Sarratt, Brockman's common law wife, also witnessed the incident. She testified that before Brockman left the store to check on the gas pumps, she was suspicious of someone in dark clothing loitering in front of the store. When Brockman returned, she asked what had taken so long. Brockman responded that he was attempting to determine who was

ducking around the corner of the building. Sarratt then testified:

> I saw Mr. Brockman duck down and I didn't know what was going on. But I looked around. Somebody was in the door, two, two men. One man with dark clothing and I forgot what the other man had on. But [he] was waving something. So I ran to the poker machine and I ducked down and then they left. . . . They didn't come on in the store. But they had the door open and one guy [was] doing something like this [and] saying something. And the guy in the black ran. The other guy was still standing there and I said what was he saying. . . . [H]e wouldn't answer. He left.

Sarratt testified both perpetrators were black males, one of whom wore a hooded piece of clothing and waved something. She also identified one of the perpetrators as the man who had spoken to Brockman outside the store. On cross-examination, Brockman testified the man he spoke to was not the defendant, Terry Nesbitt, whom he knew.

Officer James Powell was the first officer to respond to the reported armed robbery. En route to the scene, Powell observed a black male fitting the description of the suspect and a white male walking side-by-side down railroad tracks near the store. The black male was the defendant, Terry Nesbitt. Powell testified that although he could not identify the object, Nesbitt had something black in his right hand. As Powell swung his patrol car around, Nesbitt fled down the tracks and into the woods. Shortly thereafter, a K–9 officer and his dog tracked Nesbitt and discovered him lying in the woods. Upon discovery, Nesbitt stated, "I threw it down."

The officers handcuffed Nesbitt and placed him in a patrol car. A search of the area along the route Nesbitt had been chased produced a black nylon stocking cap and a pair of goggles. While sitting in the patrol car, Nesbitt waived his *Miranda* rights and gave the following statement:

> Me and Michael and two other guys, black males, were sitting beside the store. . . . Michael said we would do the store. We smoked two rocks and I stayed at the back of the store. Michael had the gun. It looked like a .32 auto. I was going down Druid Street when they went in the store.

Michael is a white male about six foot, twenty-six to twenty-seven years old, dark colored clothes, lives on Oak Dale Court. Michael changed clothes at the end of Druid Street and gave me the gun. The other two black males, I, I don't know their names. One lives at the boarding house on Druid Street. The other one I don't know anything about him. They are in their thirties. They always hanging around the store bumming for quarters. Me and Michael were walking down Henry Street. He was going home and I was too. Michael gave me the gun as he took a piss in the street. Then the police came up and I ran.

Nesbitt was subsequently charged with attempted armed robbery. At trial, he moved for a directed verdict based on the insufficiency of the evidence. The trial court denied the motion. Nesbitt was convicted and sentenced to ten years imprisonment. This appeal followed.

## STANDARD OF REVIEW

When reviewing the denial of a motion for directed verdict in a criminal case, the evidence must be viewed in the light most favorable to the State. *State v. Huggins,* 325 S.C. 103, 481 S.E.2d 114 (1997); *State v. Green,* 327 S.C. 581, 491 S.E.2d 263 (Ct.App.1997). "[I]f there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, an appellate court must find that the case was properly submitted to the jury." *State v. Kelsey,* 331 S.C. 50, 62, 502 S.E.2d 63, 69 (1998); *Huggins,* 325 S.C. at 110, 481 S.E.2d at 118. This Court is concerned with the existence or non-existence of evidence, not its weight. *Id.; Green,* 327 S.C. at 586, 491 S.E.2d at 265. Accordingly, the trial judge should grant the motion for directed verdict in those cases where the evidence merely raises a suspicion that the defendant is guilty. *Green,* 327 S.C. at 587, 491 S.E.2d at 265.

## LAW/ANALYSIS

Nesbitt argues the trial court erred in failing to grant a directed verdict because the State failed to offer sufficient evidence to prove that an attempted armed robbery occurred or that Nesbitt took part in it. We disagree.

 Attempt crimes are generally ones of specific intent such that the act constituting the attempt must be done with the intent to commit that particular crime. *State v. Sutton,* 340 S.C. 393, 532 S.E.2d 283 (2000). "In the context of an 'attempt' crime, specific intent means that the defendant consciously intended the completion of acts comprising the choate offense. In other words, the completion of such acts is the defendant's purpose." *Id.* at 397, 532 S.E.2d at 285 (citing *United States v. Calloway,* 116 F.3d 1129 (6th Cir.1997)). Additionally, the State must prove that the defendant's specific intent was accompanied by some overt act, beyond mere preparation, in furtherance of the intent, and there must be an actual or present ability to complete the crime. *State v. Evans,* 216 S.C. 328, 57 S.E.2d 756 (1950); *State v. Quick,* 199 S.C. 256, 19 S.E.2d 101 (1942). "The preparation consists in devising or arranging the means or measures necessary for the commission of the crime; the attempt or overt act is the direct movement toward the commission, after the preparations are made." *Quick,* 199 S.C. at 260, 19 S.E.2d at 103.

In *Quick,* our supreme court stated the following in determining whether a particular defendant's conduct constitutes an overt act:

It is well settled that the "act" is to be liberally construed, and in numerous cases it is said to be sufficient that the act go far enough toward accomplishment of the crime to amount to the commencement of its consummation. While the efficiency of a particular act depends on the facts of the particular case, the act must always amount to more than mere preparation, and move directly toward the commission of the crime. In any event, it would seem, the act need not be the last proximate step leading to the consummation of the offense.

*Id.* at 259, 19 S.E.2d at 102.

Nesbitt's statement referring to the perpetrators' agreement to "do the store" constitutes direct evidence that the specific intent to rob the store existed. Therefore, the determinative issue before this Court is whether the perpetrators' conduct as presented by the State was a sufficient overt act to sustain a conviction for attempted armed robbery.

Although we are unaware of any South Carolina cases factually analogous to the situation presented here, other

jurisdictions have addressed similar scenarios. In *State v. Ward*, 601 S.W.2d 629 (Mo.Ct.App.1980) three men drove to a motel with the intention of robbing it and its owner. One of the men waited in the getaway car as the other two approached the motel entrance, armed and masked. The motel manager testified he was inside the lobby when he heard a rattling at the outside door and saw the defendant, Ward, pointing a gun at him. As the manager ran from the lobby, he shouted "don't" and "take the money." *Id.* at 630. When he returned with a shotgun, the getaway car was leaving the scene. Although the defendant never entered the building, he admitted he was at the scene but left because he "changed [his] mind." *Id.* Ward was later convicted of attempted armed robbery.

On appeal, Ward argued his actions amounted to mere preparation. The Missouri Court of Appeals disagreed and affirmed Ward's conviction, stating:

> An overt criminal act is one going beyond mere preparation and done after and in furtherance of a prior plan to commit a crime. We agree with the trial court's conclusion that overt acts were shown by "defendant's act of going up to the door of the motel office, masked, with shotgun in hand, and a getaway car waiting."

*Id.* (citation omitted).

In *Young v. State*, 303 Md. 298, 493 A.2d 352 (Md.1985) police set up a surveillance of local banks in an area that had experienced a number of recent robberies. Early one afternoon, the police observed Young driving an automobile in a manner that led them to believe that he was casing the banks. Later that afternoon, Young left his vehicle and proceeded toward the front door of one of the banks. He added a stocking cap, white gloves, and an eyepatch to his attire. A bank manager observed Young approaching the door. Young's jacket collar was turned up, his right hand was in his jacket pocket, and his left hand was in front of his face. Unaware that the bank had closed for the day, Young was surprised to discover that the door was locked. He then fled, running past the windows while covering his face.

Police stopped Young as he attempted to drive away and ordered him to exit the vehicle. As he stepped out, the butt of

a .22 caliber pistol was sticking out of his right jacket pocket. A pair of white surgical gloves, a black eyepatch, a blue knit stocking cap, and a pair of sunglasses were located on the front seat.

In affirming Young's conviction for attempted armed robbery, the court noted that "the determination of the overt act which is beyond mere preparation in furtherance of the commission of the intended crime is a most significant aspect of criminal attempts." *Id.* at 357. The court went on to hold that Young's conduct leading to his apprehension established the necessary overt act toward the commission of armed robbery. The court stated: "Even if we assume that all of Young's conduct before he approached the door ... was mere preparation, ... when Young tried to open the bank door ... that act constituted a 'substantial step' toward the commission of the intended crime." *Id.* at 360.[1]

In *State v. Parker*, 66 N.C.App. 355, 311 S.E.2d 327 (1984) the defendant, Parker, armed with a gun, was lying beside a hedge across the street from a market store. He then crossed the street and got on a bicycle, which he rode a short distance before returning to the area near the hedge. Shortly thereafter, a police officer responding to a complaint from a suspicious employee arrived at the scene. Parker quickly walked away and was arrested while attempting to reach his bicycle.

In reversing Parker's conviction for attempted armed robbery, the court found that Parker's actions amounted to no more than mere preparation. The court stated: "Although lurking outside a place of business with a loaded pistol may be unlawful conduct, it does not constitute the sort of overt act which would clearly show that defendant attempted to rob that business." *Id.* at 329.

We believe the facts presented in the instant case more closely resemble those addressed in *Ward* and *Young* than in *Parker*. In *Parker*, the defendant never made any advance

---

1. In determining the existence of an overt act which is beyond mere preparation, the Maryland Court of Appeals adopted the "substantial step" approach, which posits that a person is guilty of an attempt to commit a crime where he purposely does or omits to do anything which constitutes a substantial step in a course of conduct planned to culminate in his commission of the crime. *See Young,* 493 A.2d at 358.

toward his intended target. In this case, as in *Ward* and *Young*, the perpetrators approached the entrances of the buildings while armed and disguised and committed an overt act in attempting to gain entrance.

■ According to Brockman, a black male masking his appearance approached the entrance of the store brandishing a weapon. Sarratt testified that one of two perpetrators opened the door and said something before fleeing the scene. We find that these actions move directly toward the commission of an armed robbery. While the conduct may not have been the last proximate step toward the commission of the offense, the acts committed went beyond mere preparation. In our view, these acts are sufficient to meet the overt act requirement espoused in *Quick*. It should not be necessary to subject victims to a face-to-face confrontation with a lethal weapon in order to find the essential element of an overt act. From the sum of all evidence presented, the jury could infer that an armed robbery was immediately forthcoming, or that the attempt had begun.

Nesbitt also argues, however, that even if the State presented sufficient evidence to establish that an attempted armed robbery occurred, it failed to establish that he took part in it. We disagree.

Although the State relied exclusively on circumstantial evidence to establish Nesbitt's participation, a trial judge is nevertheless required to submit the case to the jury if there is *"any substantial evidence* which reasonably tends to prove the guilt of the accused, or from which his guilt may be fairly and logically deduced." *See State v. Lollis,* 343 S.C. 580, 584, 541 S.E.2d 254, 256 (2001) (quoting *State v. Mitchell,* 341 S.C. 406, 409, 535 S.E.2d 126, 127 (2000)) (emphasis added); *see also State v. Stokes,* 299 S.C. 483, 386 S.E.2d 241 (1989); *State v. Edwards,* 298 S.C. 272, 379 S.E.2d 888 (1989); *State v. Littlejohn,* 228 S.C. 324, 89 S.E.2d 924 (1955).

Clearly, the trial judge should grant a directed verdict motion when the evidence merely raises a suspicion that the defendant is guilty. *State v. Martin,* 340 S.C. 597, 533 S.E.2d 572 (2000) (citing *State v. Irvin,* 270 S.C. 539, 243 S.E.2d 195 (1978)). It is equally clear, however, that this Court must view the evidence in a light most favorable to the State. *State v. Burdette,* 335 S.C. 34, 515 S.E.2d 525 (1999).

Sarratt testified the two perpetrators that approached the store were black males, one of whom was wearing a hooded piece of clothing. Brockman testified one of the men was wearing a mask or goggles and was armed with a gun. Nesbitt admitted he was present when the discussion to "do the store" occurred and at one point had possession of the gun. Officer Powell arrived at the scene shortly after the attempted robbery and observed Nesbitt in the vicinity of the store carrying a black object. When Powell approached Nesbitt, he fled into the woods. After his apprehension, Nesbitt stated, "I threw it down." The police later found a stocking cap and goggles along the route Nesbitt had been chased.

Viewing this evidence as we must, in a light most favorable to the State, we find there is substantial circumstantial evidence from which Nesbitt's participation in the attempted armed robbery could fairly and logically be deduced. The trial judge was, therefore, required to submit the case to the jury.

For the foregoing reasons, the decision of the trial court is **AFFIRMED.**

HEARN, C.J., CURETON, and SHULER, JJ., concur.