THE STATE OF SOUTH CAROLINA

THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State,       
Respondent,
 
 
 

v.

 
 
 
Kurt Legette,       
Appellant.
 
 
 

Appeal From Dillon County
James E. Lockemy, Circuit Court Judge

Unpublished Opinion No. 2003-UP-409
Submitted April 18, 2003 - Filed June 
 18, 2003

AFFIRMED

 
 
 
Assistant Appellate Defender Tara S. Taggart, of Columbia; 
 for Appellant.
Attorney General Henry Dargan McMaster, Chief Deputy Attorney 
 General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, 
 Assistant Attorney General Deborah R. J. Shupe, of Columbia; Jay E. Hodge, Jr., 
 of Cheraw; for Respondent.
 
 
 

PER CURIAM:  Appellant, Kirt Legette, was 
 indicted for two counts of attempting or committing a lewd act upon a minor.  
 He was convicted on both counts and the trial judge sentenced him to four- year 
 terms on each charge.  We affirm.  
FACTUAL/PROCEDURAL BACKGROUND
On the night of June 16, 2000, Patricia Williams 
 took her two daughters, nine year-old Patrice and ten year old Farion, to Margaret 
 Drawhornes house and asked her to keep the girls for her while she went out 
 that evening.  Patricia considered Margaret to be like a mother to her, and 
 the two girls referred to Margaret as their grandmother.  When the girls arrived 
 at the home, Margaret was there, along with Kirt Legette, the boyfriend of Margarets 
 daughter who lived in the residence with them.  
After Patricia left, the girls began playing Nintendo 
 in one room while Margaret was in another room sleeping.  Patrice testified 
 that as they played the game, Legette came to the door of the room and asked 
 them if they wanted $5.00.  When they responded that they did, Legette told 
 them if they wanted $5.00, they should come knock on his door.  The girls continued 
 playing the Nintendo game, and Legette kept coming back and forth to the door.  
 He then told them if they wanted a soda to come knock on his door.  Patrice 
 finally went to Legettes room, and Legette stated, Ill give you $5.00 to 
 play with me.  Patrice told Legette she did not know what he meant, and Legette 
 stated, Like that.  Patrice then went back to her sister and told her what 
 had occurred.  Farion then went to Legettes room, and Patrice heard Legette 
 ask her sister, Kid, you ever suck a man?  Farion responded that she had not, 
 and Legette then offered her $5.00 to suck mine.  Farion left and told her 
 sister what happened and the two then ran out of the house and down to the Sky 
 Light Club to find their mother.  
Patrice testified that when Legette asked her if 
 she would play with him for $5.00, he was asking her [t]o play with [his] private 
 parts meaning his penis or male parts.  She further stated that Legettes shorts 
 were jacked up on him as he laid on the bed, and she could see some of his 
 private parts.  When they arrived at the Sky Light Club, the girls found Wanda 
 Drawhorne, Legettes girlfriend, and they told her what had occurred.  Wanda 
 then went inside and got Patricia for them.  
Farion likewise testified that she and her sister 
 were at Margarets house playing a Nintendo game, when Legette kept walking 
 by the door.  Margaret was watching movies, but then fell asleep.  Legette came 
 to the door and asked the girls if they wanted $5.00.  He then told them to 
 knock on his door if they wanted the money.  As they continued to play the Nintendo 
 game, Legette returned and stated, If yall want a soda, yall come knock on 
 my door.  Eventually, Legette called Patrice to his room, and although reluctant, 
 she went to him.  Legette then asked Patrice if she want[ed] to play with him.  
 Although Patrice understood what Legette meant, she did not want him to know 
 that, so she told him, I dont know what youre talking about.  After Patrice 
 told Farion what had occurred, Farion went to Legettes room, and Legette asked 
 Farion if she ever suck[ed] a mans penis.  Farion said, No.  Legette then 
 stated, If you suck mine, Ill give you $5.00.  Farion then went back to her 
 sister, and the two ran out of the house and down the street to the Sky Light 
 Club.  They found Wanda Drawhorne and Carolyn Legette at the club and told them 
 the story.  Wanda and Carolyn then went in the club and got Patricia for the 
 girls.  
At the close of the States case, Legette moved 
 for a directed verdict arguing there was no evidence he attempted to do anything 
 to either one of these children and asserted an offer for them to perform oral 
 sex or play with him was not sufficient to constitute an attempted lewd act.  
 The trial judge denied the motion.  He determined that playing with someone 
 or . . . oral sex requires a part of the other persons body and, therefore, 
 there was sufficient evidence to submit the issue to the jury.  
Shortly after deliberations began, the jury sent 
 a note asking whether solicitation for oral sex from a minor for payment constitute[s] 
 . . . a lewd and lascivious act upon a minor.  The trial judge recharged the 
 jury on the definitions of lewd act and lascivious act.  Within twenty minutes, 
 the jury returned to the courtroom with guilty verdicts on both counts.  
ISSUE
Whether the solicitation of the 
 minors to perform oral sex or play with appellant constituted attempts to 
 commit lewd acts upon the minors such that the trial judge properly denied appellants 
 motion for directed verdict.
STANDARD OF REVIEW
On appeal from the denial of a motion for directed 
 verdict, an appellate court must view the evidence in the light most favorable 
 to the State.  State v. Green, 350 S.C. 580, 584, 567 S.E.2d 505, 507-08 
 (Ct. App. 2002); State v. Lollis, 343 S.C. 580, 583, 541 S.E.2d 254, 
 256 (2001).  Where the State fails to produce evidence of the offense charged, 
 a defendant is entitled to a directed verdict.  Lollis, 343 S.C. at 584, 
 541 S.E.2d at 256.  When ruling on a directed verdict motion, the trial judge 
 is concerned with the existence of evidence, not its weight.  State v. Walker, 
 349 S.C. 49, 53, 562 S.E.2d 313, 315 (2002).  If there is any direct evidence 
 or any substantial circumstantial evidence reasonably tending to prove the guilt 
 of the accused, an appellate court must find the case was properly submitted 
 to the jury.  Lollis, 343 S.C. at 584, 541 S.E.2d at 256.  Conversely, 
 a trial judge should grant a motion for a directed verdict when the evidence 
 merely raises a suspicion the accused is guilty.  Id.
LAW/ANALYSIS
Legette argues on appeal that the trial judge erred 
 in denying his motion for directed verdict.  He asserts, taken in the light 
 most favorable to the State, the testimony might support a charge of contributing 
 to the delinquency of a minor or solicitation, but that there is no evidence 
 he committed or attempted to commit any act whatsoever upon or with the body 
 parts of either child.  He contends the jury question asking whether solicitation 
 for oral sex from a minor constituted a lewd and lascivious act demonstrated 
 that the denial of the directed verdict motion allowed the jury to engage in 
 conjecture and speculation.  We disagree.
South Carolina Code Ann. § 16-15-140 is entitled Committing 
 or attempting lewd act upon child under sixteen and provides in pertinent part 
 as follows:

It is unlawful for a person over the age of fourteen 
 years to wilfully and lewdly commit or attempt a lewd or lascivious act upon 
 or with the body, or its parts, of a child under the age of sixteen years, with 
 the intent of arousing, appealing to, or gratifying the lust or passions or 
 sexual desires of the person or of the child.

S.C. Code Ann. § 16-15-140 (2003).
Lewd and lascivious are synonymous terms, often 
 used interchangeably.  State v. Bouye, 325 S.C. 260, 266, 484 S.E.2d 
 461, 464 (1997). Websters Dictionary defines lewd as sexually unchaste or 
 licentious and defines lascivious as lewd, lustful.  Websters Ninth New 
 Collegiate Dictionary 687, 675 (9th ed. 1990).  Blacks Law Dictionary 
 defines lewd in part as obscene, lustful, indecent, lascivious, lecherous 
 and defines lascivious as tending to excite lust; lewd; indecent; obscene; 
 sexual impurity; tending to deprave the morals in respect to sexual relations; 
 licentious. Blacks Law Dictionary 907, 882 (6th ed. 1990).
In general, an attempt crime is one of specific 
 intent such that the act constituting the attempt must be done with the intent 
 to commit that particular crime.  State v. Nesbitt, 346 S.C. 226, 231, 
 550 S.E.2d 864, 866 (Ct. App. 2001); State v. Sutton, 340 S.C. 393, 397, 
 532 S.E.2d 283, 285 (2000).  The State must show the defendant consciously intended 
 the completion of the acts comprising the choate offense, and that the defendants 
 specific intent was accompanied by some overt act, beyond mere preparation, 
 in furtherance of the intent, with the actual or present ability to complete 
 the crime.  Nesbitt, 346 S.C. at 231, 550 S.E.2d at 866.  While the act 
 must amount to more than mere preparation and must move directly toward the 
 commission of the crime, it does not necessarily need to be the last proximate 
 step leading to consummation of the offense.  Id. at 231, 550 S.E.2d 
 at 866-67.  
Viewed in a light most favorable to the State there 
 is evidence Legette attempted to get Patrice and Farion to play with his genitals 
 and/or perform oral sex on him.  As noted by the trial judge, such actions would 
 require parts of the girls bodies.  We agree with the State that there is evidence 
 Legettes conduct constituted overt acts with the intention of completing the 
 commission of a lewd or lascivious act . . . with the body, or its parts, 
 of both Patrice and Farion.    
For the forgoing reason, the appellants convictions are
AFFIRMED.
 CURETON, ANDERSON and HUFF, JJ., concur.