THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD 
 NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED 
 BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State,       
Respondent,
 
 
 

v.

 
 
 
John Henry Chancy,       
Appellant.
 
 
 

Appeal From Orangeburg County
James C. Williams, Jr., Circuit Court 
 Judge

Unpublished Opinion No. 2004-UP-654
Submitted November 1, 2004  Filed December 
 22, 2004

AFFIRMED

 
 
Edgar Warren Dickson, of Orangeburg, for Appellant.
Attorney General Henry Dargan McMaster, Chief Deputy Attorney 
 General John W. McIntosh, Assistant Attorney General David A. Spencer, all of 
 Columbia; and Solicitor Walter M. Bailey, Jr., of Summerville, for Respondent.
 
 

PER CURIAM:  John Henry Chancy appeals his 
 conviction for attempted armed robbery.  He argues the trial court erred by 
 denying his motion for a directed verdict and in admitting identification evidence 
 that was unduly suggestive and presented a substantial likelihood of misidentification.  
 We affirm. [1] 
FACTS
Catherine Winningham worked for Home 
 Insurance Agency in Holly Hill.  Her office was divided into two distinct offices:  
 one room with a waist-high counter where she handled insurance matters, and 
 a separate room where Western Union exchanges were handled.  The office was 
 well lit by both natural and fluorescent lighting.  Around 4:00 p.m. on September 
 24, 2001, a tall, light-skinned black male and a short black male walked into 
 the insurance agency.  The tall male stood by the front door while the short 
 male approached the counter and asked Winningham for a quote on insurance.  
 Winningham walked to her computer to get a quote.  When she turned around to 
 ask the short male for some information, he jumped over the counter and pointed 
 a gun in Winninghams face.  Winningham began to scream, ignoring the short 
 males orders to be quiet and get on the floor.  The tall, light-skinned 
 male stood approximately seventy-two inches from Winningham for the ten-minute 
 duration of the encounter. Winningham testified she got a very good look at 
 him.  Winninghams screams alerted Mary Jane Goodine in the parking lot, and 
 the two males fled the building without taking anything.  Nearby police officers 
 witnessed the two men running from the office and a chase ensued.  Alvin William 
 Sumpter and John Henry Chancy were arrested a short time thereafter. 
Winningham gave police an oral description of the 
 two men.  She stated the one with the gun had a dark complexion and wore dark 
 clothes, and the second man was a tall, light-skinned black man wearing light 
 clothes.  The next day, police summoned Winningham to the station to view a 
 photo lineup.  The lineup was comprised of six pictures of black males.  Five 
 of the men in the photographs had dark skin and one had significantly lighter 
 skin.    After viewing the photos for two minutes, Winningham positively identified 
 the light-skinned individual, Chancy, as the tall man who stood near the door.    
 Winningham testified she recognized Chancy from the view she had of him in 
 the office that day.                          
At trial, Winningham testified she observed the 
 short male wearing a blue shirt and dark jeans and the tall male wearing jeans 
 and a light gray sweatshirt.  Winningham testified that after the short male 
 jumped over the counter, she knew that the man did not want a quote and she 
 was going to be robbed.  She stated that cash was not kept in the insurance 
 office because there was a separate room where it was kept.  When asked whether 
 the gunman ever asked her for cash or her purse, Winningham stated: He couldnt 
 get me to stop screaming enough, I dont think, to ask me anything.  
Mary Jane Goodine testified that as she 
 was leaving the insurance agency, she passed the two males entering.  She stated 
 she was standing in the parking lot when she heard Winningham start to scream.  
 Goodine screamed robbery, robbery, robbery, to get the attention of the nearby 
 police officer directing traffic.  The two men bumped into Goodine as they ran 
 out of the insurance agency.  Goodine described the two men to police as a short 
 male wearing a blue jogging jacket or shirt and a taller male wearing a dark 
 gray sweatshirt.  
At trial, Chancy admitted he was at the 
 office and was waiting by the door while a dark-skinned individual spoke with 
 Winningham.  He stated he wore a gray sweater jacket and black jogging pants.  
 Chancy testified he ran out of the office because he panicked, but that he had 
 no involvement in the attempted robbery.            
Chancy made a pretrial motion to exclude 
 Winninghams identification arguing the photo lineup was unduly suggestive.  
 After hearing in camera testimony and arguments, the trial court denied the 
 motion.  At the close of the States case, Chancy moved for a directed verdict, 
 arguing there was no evidence of intent to commit a robbery because there was 
 no request for money.  The trial court denied the motion, finding there was 
 substantial circumstantial evidence that Chancys intent was to commit a robbery. 
 Chancy renewed his motions and objections after all evidence had been presented.  
 The jury convicted Chancy of attempted armed robbery.  The trial court sentenced 
 him to twenty years imprisonment.  Chancy appeals.
DISCUSSION
I.
Chancy argues the trial court 
 erred in failing to grant his motion for a directed verdict because there was 
 no evidence that the gunman intended to take money or goods or that there was 
 any money or goods to take in order to commit a robbery.  We disagree. [2]   
On appeal from the denial of a directed 
 verdict, an appellate court must view the evidence in the light most favorable 
 to the State.  State v. Lollis, 343 S.C. 580, 583, 541 S.E.2d 254, 256 
 (2001); State v. Burdette, 335 S.C. 34, 46, 515 S.E.2d 525, 531 (1999); 
 State v. Kelsey, 331 S.C. 50, 62, 502 S.E.2d 63, 69 (1998).  When ruling 
 on a motion for a directed verdict, the trial court is concerned with the existence 
 of evidence, not its weight.  Burdette, 335 S.C. at 46, 515 S.E.2d at 
 531; State v. Wakefield, 323 S.C. 189, 197, 473 S.E.2d 831, 835 (Ct. 
 App. 1996).  If there is any direct or any substantial circumstantial evidence 
 reasonably tending to prove the guilt of the accused, an appellate court must 
 find the case was properly submitted to the jury.  Lollis, 343 S.C. 
 at 584, 541 S.E.2d at 256.  Conversely, a trial court should grant a motion 
 for a directed verdict when the evidence merely raises a suspicion the accused 
 is guilty.  Id. at 584, 541 S.E.2d at 256.   
Robbery is defined as the felonious or 
 unlawful taking of money, goods or other personal property of any value from 
 the person of another or in his presence by violence or by putting such person 
 in fear.  State v. Bland, 318 S.C. 315, 317, 457 S.E.2d 611, 612 (1995).  
 It is a felony to commit robbery while armed with a deadly weapon.  S.C. Code 
 Ann. § 16-11-330(A) (2003).  Attempted armed robbery is also a felony.  S.C. 
 Code Ann. § 16-11-330(B) (2003) (A person who commits attempted armed robbery 
 while armed with a pistol . . . or other deadly weapon, . . . is guilty of a 
 felony . . . .).  Attempted armed robbery is defined as acts towards the commission 
 of a robbery with the intent to commit the robbery, but the act falls short 
 of actual completion.  State v. Hiott, 276 S.C. 72, 80, 276 S.E.2d 163, 
 167 (1981).  The act towards the commission of the robbery is to be liberally 
 construed, and it is sufficient if the act goes far enough toward accomplishment 
 of the crime to amount to the commencement of its consummation.  State v. 
 Quick, 199 S.C. 256, 259, 19 S.E.2d 101, 102 (1942).
This court has addressed acts sufficient 
 to constitute attempted armed robbery.  In State v. Nesbitt, 346 S.C. 
 226, 550 S.E.2d 864 (Ct. App. 2001), an armed and masked man approached the 
 front door of a convenience store, waiving a gun.  The gunman did not point 
 the gun at anyone, he did not enter the store, and he fled the scene within 
 seconds.  Nesbitt was charged and convicted of attempted armed robbery.  In 
 affirming the trial courts denial of Nesbitts motion for a directed verdict, 
 we addressed the intent requirements of attempt crimes:

Attempt crimes are generally ones of specific intent such 
 that the act constituting the attempt must be done with the intent to commit 
 that particular crime.  State v. Sutton, 340 S.C. 393, 532 S.E.2d 283 
 (2000).  In the context of an attempt crime, specific intent means that the 
 defendant consciously intended the completion of acts comprising the choate 
 offense.  In other words, the completion of such acts is the defendants purpose.  
 Id. at 397, 532 S.E.2d at 285 (citing United States v. Calloway, 
 116 F.3d 1129 (6th Cir. 1997)).  Additionally, the State must prove that the 
 defendants specific intent was accompanied by some overt act, beyond mere preparation, 
 in furtherance of the intent, and there must be an actual or present ability 
 to complete the crime.  State v. Evans, 216 S.C. 328, 57 S.E.2d 756 (1950);  
 State v. Quick, 199 S.C. 256, 19 S.E.2d 101 (1942).  The preparation 
 consists in devising or arranging the means or measures necessary for the commission 
 of the crime; the attempt or overt act is the direct movement toward the commission, 
 after the preparations are made.  Quick, 199 S.C. at 260, 19 S.E.2d 
 at 103.

Nesbitt, 346 S.C. at 231, 550 S.E.2d at 866.  
 This court determined a jury could infer from the evidence that an armed robbery 
 was immediately forthcoming, or that the attempt had begun.  Id. at 
 234, 550 S.E.2d at 868.
Viewing the evidence 
 in the light most favorable to the State, evidence existed that reasonably tended 
 to prove Sumpter and Chancy had the intent to commit armed robbery.  Sumpter 
 jumped over the counter, pointed a gun at Winningham, and demanded that she 
 get down on the floor while Chancy waited by the door.  Although Sumpter and 
 Chancy fled the scene prior to making a demand for money and any money available 
 was located in another room, the act of pointing the gun at Winningham was an 
 overt act towards completing the crime of armed robbery.  As in Nesbitt, 
 the jury in the present case could infer from the evidence that the gunman was 
 attempting to commit armed robbery.  
Because the intent to commit armed robbery can 
 be inferred from the circumstantial evidence in this case, we find the trial 
 court did not abuse its discretion in submitting this case to the jury.  Accordingly, 
 the trial courts decision to deny the motion for a directed verdict is affirmed.
II.
Chancy next argues the trial court erred in denying 
 his motion to suppress the photo lineup identification because it was unnecessarily 
 suggestive and there was a substantial likelihood of misidentification.  We 
 disagree.
In criminal cases, the appellate court sits 
 to review errors of law only. State v. Cutter, 261 S.C. 140, 147, 
 199 S.E.2d 61, 65 (1973).  We are bound by the trial courts factual findings 
 unless they are clearly erroneous.  State v. Quattlebaum, 338 
 S.C. 441, 452, 527 S.E.2d 105, 111 (2000).  Concerning the admission of evidence, 
 the trial judges determination will be sustained absent error and resulting 
 prejudice.  State v. Hamilton, 344 S.C. 344, 353, 543 S.E.2d 586, 
 591 (Ct. App. 2001).
A criminal defendant may be deprived of due process 
 of law by an identification procedure that is unnecessarily suggestive and conducive 
 to irreparable mistaken identification.  Neil v. Biggers, 409 U.S. 188, 
 196 (1972).  [T]he central question for determining the admissibility of pretrial 
 identification is whether, under the totality of the circumstances, the procedure 
 was so impermissibly suggestive as to give rise to a very substantial likelihood 
 of misidentification.  State v. Washington, 323 S.C. 106, 110, 473 S.E.2d 
 479, 481 (Ct. App. 1996).  Consequently, the United States Supreme Court has 
 developed a two-prong inquiry to determine the admissibility of an out-of-court 
 identification.  Neil, 409 U.S. at 198.  First, the court must determine 
 whether the identification process was unduly suggestive.  If the court answers 
 this question in the affirmative, then it must determine whether the out-of-court 
 identification was nevertheless so reliable that no substantial likelihood of 
 misidentification existed.  State v. Moore, 343 S.C. 282, 287, 540 S.E.2d 
 445, 447 (2000) (citing Neil v. Biggers, 409 U.S. 188, 198 (1972)).  
 Courts should consider the totality of the circumstances when employing the 
 test.  Neil, 409 U.S. at 199.  Even if some degree of suggestiveness 
 exists in the pre-trial identification, suppression of the identification is 
 not automatically required.  Suggestiveness alone does not mandate the exclusion 
 of evidence.  State v. Patterson, 337 S.C. 215, 229, 522 S.E.2d 845, 
 852 (Ct. App. 1999) (citations omitted).  [R]eliability is the linchpin in 
 determining the admissibility of identification testimony. Manson v. Brathwaite, 
 432 U.S. 98, 114 (1977).

The following factors are to be considered in evaluating the totality of the 
 circumstances as to whether an identification is admissible: 
 
[T]he opportunity of the witness to view the criminal at the 
 time of the crime, the witness degree of attention, the accuracy of the witness 
 prior description of the criminal, the level of certainty demonstrated by the 
 witness at the confrontation, and the length of time between the crime and the 
 confrontation.

Neil, 409 U.S. at 199; Moore, 343 S.C. at 289, 540 S.E.2d 
 at 448-49.   The corrupting effect of a suggestive identification is to be weighed 
 against these factors.  Manson, 432 U.S. at 114.
The trial court did not make a separate ruling 
 on each prong but found that under the totality of the circumstances, the photo 
 lineup was not so unnecessarily suggestive as to result in misidentification.  
 The trial court noted that Winningham testified in camera that she identified 
 Chancy based on the view she had of him on the day of the attempted robbery. 

We find no reversible error in the trial courts 
 holding.  However, it is patent the photo lineup was unduly suggestive.  Winningham 
 was asked to identify a suspect she described as a light-skinned black man from 
 six photographs containing only one light-skinned individual.  The police officer 
 who showed Winningham the photo lineup testified that it was suggestive.    
 The record reveals Chancys photo clearly stood out from the others.  
Even though the identification process was unduly 
 suggestive, no substantial likelihood of misidentification existed.  Reviewing 
 the Neil v. Biggers factors, we find a high degree of reliability regarding 
 the identification.  Neil, 409 U.S. at 199.  First, Winningham had the 
 opportunity to view Chancy at close range for some time.  Winningham testified 
 she viewed Chancy for at least ten minutes from a distance of seventy-two inches 
 on the day of the incident.  Second, Winninghams attention was acute.  She 
 testified she got a very good look at Chancy, and she was the victim of the 
 crime.  Third, Winninghams description of Chancy to the police on the day of 
 the incident was highly accurate.  She described her attacker as a tall, light-skinned 
 black man wearing light clothes.  Chancy matched this description and was apprehended 
 after police witnessed him fleeing the office.  Fourth, Winningham exhibited 
 a high degree of certainty when she positively identified Chancy after viewing 
 the photos for only two minutes.    Lastly, the length of time between the crime 
 and the photo lineup was merely one day.  
Perhaps the best indication that Winninghams identification 
 was highly reliable was the testimony of Chancy himself.  Chancy freely admitted 
 that he entered the office, stood by the door, and witnessed an attempted robbery 
 on the day in question.  Several police officers witnessed Chancy running from 
 the office, and one never lost sight of him until he was apprehended.  The only 
 reasonable inference that can be drawn from these facts is that Winningham correctly 
 identified Chancy.  Therefore, we find the trial court properly admitted the 
 pretrial identification.
Accordingly, Chancys conviction and sentence 
 are
 AFFIRMED.
 HUFF, KITTREDGE, and BEATTY, JJ., concur.

 
 
 [1]  Because oral argument would not aid the court in resolving the issues 
 on appeal, we decide this case without oral argument pursuant to Rule 215, 
 SCACR.

 
 
 [2]    Chancys co-defendant with whom he was jointly tried appealed this 
 same issue.  The analysis for this issue follows this courts unpublished 
 opinion, State v. Sumpter, 2003-UP-545 (S.C. Ct. App. filed Sept. 25, 
 2003).