647 S.E.2d 702

**The STATE, Respondent,**

v.

**Furman THOMPSON, Appellant.**

**No. 4255.**

Court of Appeals of South Carolina.

· Submitted May 1, 2007.

Decided June 18, 2007.

Appellate Defender Eleanor Duffy Cleary, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Shawn L. Reeves, all of Columbia;  and Solicitor Robert M. Ariail, of Greenville, for Respondent.

WILLIAMS, J.:

Furman Thompson appeals his convictions for first degree burglary and attempted armed robbery, claiming the judge erred in failing to direct a verdict of not guilty.  We affirm.

## FACTS

On the morning of February 16, 2004, Thompson met with Wanda Harris and discussed whether she knew of a "lick." Harris testified a "lick" is a target for a robbery.  Later that day, Harris called Thompson and told him about a potential lick and asked him to meet her.  Thompson showed up approximately one hour later with Darrel Sturkey, the codefendant in the underlying case.  Sturkey and Harris planned the details of the burglary while Thompson spoke with Tyrone Scott, who accompanied Harris to the scene.

According to the plan, Harris walked alone to the apartment to investigate the potential lick under the guise of purchasing crack cocaine.  Harris testified that as she approached the apartment, Scott lagged behind her.  Just before Harris entered the apartment, she turned around and did not see Thompson or Sturkey.

Harris then entered the apartment and began a conversation with Torrey Hudson, who lived there, while Hudson's friend, Andre Chiles, sat on the couch watching television. Chiles had a gun on the couch next to him.  While Harris attempted to buy some crack cocaine, Scott knocked on the door and was let into the apartment.  Harris and Scott are frequently together so this did not alarm Hudson or Chiles. Scott informed Hudson he knew of other potential customers in case Hudson wanted to sell more crack cocaine, but Hudson informed Scott he did not have any more crack.  Shortly thereafter, Harris and Scott attempted to leave the apartment.

As Harris walked out of the door, she saw Sturkey standing against the outer wall of the apartment pulling a ski mask

over his head. Sturkey pushed Harris out of the way, stepped into the apartment and fired a gun into the apartment. Chiles immediately grabbed his gun and returned fire towards the intruder. After several shots were exchanged between Sturkey and Chiles, Chiles' gun jammed and he retreated into the bathroom to clear the gun. When Chiles came out of the bathroom, the apartment was empty.

As a result of the altercation, Chiles sustained two gunshots to the abdomen. Sturkey sustained one gunshot to his right leg. Nothing was stolen from the apartment or from either of the occupants. Thompson and Sturkey were charged with first degree burglary and attempted armed robbery, and Sturkey was also charged with assault and battery with attempt to kill. Thompson and Sturkey were tried together, and the jury convicted each on their respective charges.

## DISCUSSION

Thompson argues the trial judge erred by not directing a verdict of not guilty because the state failed to present any direct or substantial circumstantial evidence to show that Thompson was guilty of first degree burglary or attempted armed robbery, either as a principal or as an accomplice. We disagree.

When analyzing the denial of a directed verdict motion, this Court must view the evidence in the light most favorable to the State. *State v. McHoney*, 344 S.C. 85, 97, 544 S.E.2d 30, 36 (2001). "The trial court, in a directed verdict motion, is concerned with the existence or nonexistence of evidence, not with its weight." *State v. Elmore*, 368 S.C. 230, 234, 628 S.E.2d 271, 273 (Ct.App.2006). The trial court must be affirmed if the record contains any direct or substantial circumstantial evidence reasonably tending to prove the guilt of the accused or from which guilt may be fairly and logically deduced. *State v. Avery*, 333 S.C. 284, 294, 509 S.E.2d 476, 482 (1998); *State v. Williams*, 303 S.C. 274, 276, 400 S.E.2d 131, 132 (1991).

"Under the 'hand of one is the hand of all' theory [of accomplice liability], one who joins with another to accomplish an illegal purpose is liable criminally for everything done by

his confederate incidental to the execution of the common design and purpose." *State v. Condrey,* 349 S.C. 184, 194, 562 S.E.2d 320, 324 (Ct.App.2002). "A defendant may be convicted on a theory of accomplice liability pursuant to an indictment charging him only with the principal offense." *Id.* at 194, 562 S.E.2d at 325.

Mere presence and prior knowledge that a crime was going to be committed, without more, is insufficient to constitute guilt. *Id.* at 195, 562 S.E.2d at 325. However, "presence at the scene of a crime by pre-arrangement to aid, encourage, or abet in the perpetration of the crime constitutes guilt as a [principal]." *State v. Hill,* 268 S.C. 390, 395–96, 234 S.E.2d 219, 221 (1977).

A person is guilty of first degree burglary when he enters a dwelling without consent and with intent to commit a crime in the dwelling and either:

(1) when, in effecting entry or while in the dwelling or in immediate flight, he or another participant in the crime: (a) is armed with a deadly weapon or explosive; or (b) causes physical injury to a person who is not a participant in the crime; or (c) uses or threatens the use of a dangerous instrument; or (d) displays what is or appears to be a knife, pistol, revolver, rifle, shotgun, machine gun, or other firearm; or ... (3) the entering or remaining occurs in the nighttime.

S.C.Code Ann. § 16–11–311 (Supp.2006). A person is guilty of attempted armed robbery if the person has a specific intent to commit armed robbery. *State v. Nesbitt,* 346 S.C. 226, 231, 550 S.E.2d 864, 866–67 (Ct.App.2001). "Robbery is defined as the felonious or unlawful taking of money, goods, or other personal property of any value from the person of another or in his presence by violence or by putting such person in fear." *State v. Bland,* 318 S.C. 315, 317, 457 S.E.2d 611, 612 (1995). The crime is "armed robbery" when a person commits a robbery while armed with a deadly weapon. *State v. Tasco,* 292 S.C. 270, 272, 356 S.E.2d 117, 118 (1987).

Testimony in this case establishes that the codefendant, Sturkey, entered the apartment without permission, during the nighttime, with a gun, and intended to commit the crime of armed robbery. Therefore, the crime of burglary in

the first degree with respect to Sturkey was established sufficiently to withstand a directed verdict motion. Testimony also showed that it was the intent of Sturkey, at the very least, to use a deadly weapon to rob Hudson of money, goods, or personal property. Therefore, the crime of attempted armed robbery with respect to Sturkey was sufficiently established to withstand a directed verdict motion. The question that remains before us is whether Sturkey's crimes can be imputed to Thompson either as a principal or under a theory of accomplice liability.

Sturkey's statement, which was read into evidence during Officer Bobby Carias' testimony, establishes that Sturkey and three others were together when they came up with the plan to rob Hudson. Later when everyone ran from the scene, "the guy asked if [Sturkey] was okay. [Sturkey] told him [he] was okay. . . . We got in the car and went home." Sturkey's statement constitutes direct evidence that Sturkey arrived at the scene and left the scene with one of the three other participants.

Harris' testimony constitutes direct evidence that Thompson asked her if she knew of a lick, then later spoke to her on the phone about a possible lick. Further, it establishes Thompson then showed up with Sturkey at the apartment complex where Harris informed him there was a possible lick, and Thompson was present in the vicinity while Harris and Sturkey planned the robbery.

In *Hill,* the appellant previously discussed the robbery with the perpetrators, appeared at the crime scene, and may have viewed the commission of the robbery, but he was possibly unaware of the final planning and did not accompany the perpetrators as they committed the robbery. *Hill* at 396, 234 S.E.2d at 221. The Court in *Hill* found the evidence justified submission of the case to the jury. *Id.* Likewise, here Thompson discussed the robbery, appeared at the crime scene with Sturkey, and may have viewed the attempted robbery. At the very least, Thompson aided the commission of the crime by driving Sturkey to the scene and encouraged the crime by setting the events in motion earlier that day.

Thus, under the hand of one is the hand of all theory of accomplice liability, acts committed by Sturkey are imputed

to Thompson making him guilty of any acts done incidental to the execution of the common design or scheme of the crime. *State v. Curry*, 370 S.C. 674, 684, 636 S.E.2d 649, 654 (Ct.App. 2006). Therefore, viewing the evidence in the light most favorable to the State, the trial judge properly denied Thompson's motion for a directed verdict on each charge and submitted the case to the jury.

Accordingly, the trial court's decision is
**AFFIRMED.**[1]

STILWELL, and SHORT, JJ., concur.

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.