**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Aaron Young, Sr., Appellant.

Appellate Case No. 2016-000873

Appeal From Beaufort County
Thomas W. Cooper, Jr., Circuit Court Judge

Unpublished Opinion No. 2019-UP-233
Submitted December 6, 2018 – Filed June 26, 2019

**AFFIRMED**

Appellate Defender Kathrine Haggard Hudgins, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy Attorney General Donald J. Zelenka, Senior Assistant Attorney General J. Anthony Mabry, and Senior Assistant Deputy Attorney General Melody Jane Brown, all of Columbia; and Solicitor Isaac McDuffie Stone, III, of Bluffton, for Respondent.

**PER CURIAM:**  Aaron Young, Sr. appeals his conviction of murder in the death of Khalil S. (Victim).  On appeal, Young, Sr. contends the trial court erred in refusing to direct a verdict of acquittal for murder (1) when the State's evidence of murder was dependent upon a combination of mutual combat, accomplice liability and transferred intent to an innocent third party who was not engaged in mutual combat and (2) when the State failed to establish mutual combat at the time of the fatal shooting.  We affirm.

1.      We find the trial court did not err in refusing to direct a verdict of acquittal when the State's evidence of murder was dependent upon a combination of mutual combat, accomplice liability and transferred intent to an innocent third party not engaged in mutual combat.   In *State v. Young, Jr.*, 424 S.C. 424, 818 S.E.2d 486 (Ct. App. 2018), *cert. granted* (May 9, 2019), this court determined that under such a factual scenario, even though a non-participating innocent bystander was the victim, mutual combat is an appropriate basis for a murder charge.  *See id.* at 434, 818 S.E.2d at 490-91 (finding, under this scenario, the trial court did not err in finding mutual combat a viable theory of prosecution for the murder charge); *id.* at 434-35, 818 S.E.2d at 491 (determining the trial court did not err in applying the doctrine of transferred intent to Young, Jr., noting there was evidence Robinson fired at the Youngs with intent to kill such that his intent was transferred to Victim, and under the theory of mutual combat, all combatants are deemed equally responsible for the natural consequences of their actions during combat and all may be held equally guilty of murder when a combatant dies, regardless of which combatant fired the fatal shot).

Additionally, there is no merit to Young, Sr.'s arguments that accomplice liability is inapplicable to establish murder because he was not aiding, abetting, assisting or conspiring with Tyrone Robinson and neither he nor his son, Aaron Young, Jr., were shooting at the time Victim was shot.  The theory of criminal responsibility here was not based upon any assertion that the Youngs and Robinson were working in concert; rather, it was that *Young, Sr. and Young, Jr. aided and abetted each other* in mutual combat with Robinson in their attempt to kill Robinson, ultimately culminating in the death of Victim.  *See State v. Harry*, 420 S.C. 290, 299, 803 S.E.2d 272, 276-77 (2017) ("Under the 'hand of one is the hand of all' theory [of accomplice liability], one who joins with another to accomplish an illegal purpose is liable criminally for everything done by his confederate incidental to the execution of the common design and purpose." (alteration in original) (quoting *State v. Thompson*, 374 S.C. 257, 261-62, 647 S.E.2d 702, 704-05) (Ct. App. 2007))).  Accordingly, the trial court properly denied Young, Sr.'s motion for directed verdict of acquittal for murder that was based upon a theory of

criminal liability drawn from a combination of the legal doctrines of mutual combat, transferred intent and accomplice liability, which established the elements necessary to submit the murder charge to the jury. *See State v. Weston*, 367 S.C. 279, 292, 625 S.E.2d 641, 648 (2006) ("When reviewing a denial of a directed verdict, [the appellate court] views the evidence and all reasonable inferences in the light most favorable to the state."); *id.* at 292-93, 625 S.E.2d at 648 ("If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, the [appellate court] must find the case was properly submitted to the jury.").

2.      We also find no error in the trial court's refusal to direct a verdict of acquittal for murder on the basis of Young, Sr.'s argument that the State failed to establish mutual combat at the time of the fatal shooting. On appeal, Young, Sr. contends the evidence shows he and Young, Jr. were leaving the neighborhood in his truck when Robinson shot Victim, witness Charlese Mitchell saw Young, Sr. coming from Allen Road toward Spanish Wells five minutes after hearing the second set of rapid shots—at which point she heard the last three shots fired by Robinson, one of which killed Victim—and Mitchell confirmed no one was firing from Young, Sr.'s truck at that time. Young, Sr. argues, even if this court extends the doctrine of mutual combat to apply when a noncombatant is killed by a combatant, "the State must still prove that two combatants were firing at each other in order to establish mutual combat." The specific arguments Young, Sr. made in support of his directed verdict motion were (1) that he did not aid, abet, assist or conspire with Robinson; (2) there was no indication he ever fired a weapon; (3) there was no evidence Victim's death was the natural consequence of the actions of shooting up a car; (4) the elements of murder had not been satisfied; and (5) "mutual combat has not been proven." Thus, he only *generally* asserted to the trial court in his directed verdict motion that mutual combat had not been proven, but provided no explanation for why it had not been proven. Even assuming his arguments—that there was no evidence he ever fired a weapon or that Victim's death was the natural consequence of his actions—supported his claim that the evidence was insufficient to show mutual combat, he does not argue these bases on appeal. Further, he never argued to the trial court, as he does on appeal, that the State failed to establish mutual combat because it failed to prove Young, Sr. was engaged in mutual combat *at the time of the fatal shooting*. Young, Sr. never argued to the trial court that the State was required to show he was engaged in the exchange of gunfire with Robinson at the exact moment Victim was shot by Robinson, or that the evidence showed he had withdrawn from the mutual combat at the time of the fatal shot. Accordingly, we question whether these arguments are preserved for our review. *See State v. Legg*, 416 S.C. 9, 11 n.2, 785 S.E.2d 369, 370 n.2 (2016) (noting issues

and arguments are preserved for appellate review only when they are raised to and ruled upon by the trial court).

Nonetheless, even assuming the matter is preserved, we find the State presented sufficient evidence of mutual combat such that the trial court properly presented the matter to the jury. There is evidence from witness Mitchell and witness Tyrone Delaney that Robinson indicated to them the combatants had been shooting at each other. Thereafter these witnesses heard a set of rapid gunshots and then three different sounding gun shots, ultimately resulting in Victim's death. Although Mitchell testified she thought approximately ten minutes passed between the second set of rapid shots and the three different sounding shots, Delaney testified the rapid fire shots and the set of three shots were not far apart from each other and were closer together than five to ten minutes. Additionally, there is evidence from Young, Sr.'s statement to the authorities that Robinson was walking and shooting at their truck when Young, Jr. returned gunfire at Robinson. There also is evidence in the record of Robinson being out of his truck and walking during the exchange of gunfire between the parties when he was in the Allen Road area right before Victim was shot. Accordingly, evidence was presented from which the jury could conclude the Youngs and Robinson were engaged in mutual combat around the time Victim was fatally shot. *See Weston*, 367 S.C. at 292, 625 S.E.2d at 648 ("When reviewing a denial of a directed verdict, [the appellate court] views the evidence and all reasonable inferences in the light most favorable to the state."); *id.* at 292-93, 625 S.E.2d at 648 ("If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, the [appellate court] must find the case was properly submitted to the jury."). The parties were not required to be shooting at each other at the exact same moment a fatal shot was delivered in order for mutual combat to apply. Further, as in *Young, Jr.*, there was evidence presented in Young, Sr.'s case that the Youngs and Robinson manifested a mutual intent and willingness to fight, an antecedent agreement to fight—shown by a pre-existing dispute and ill will between the parties—and that the Youngs knew Robinson was armed and that Robinson knew the Youngs were armed. *See Young, Jr.*, 424 S.C. at 435-36, 818 S.E.2d at 491-92 (addressing Young, Jr.'s argument there was no evidence of mutual combat because Young, Jr. and Robinson never engaged in combat "at the same time," and finding that evidence of mutual combat was presented under such factual scenario because the State presented direct and circumstantial evidence of each of the necessary elements of mutual combat, i.e. mutual intent and willingness to fight, an antecedent agreement to fight, and that the combatants be armed and know the other party is armed). Finally, no evidence suggests Young, Sr. withdrew from the conflict in good faith or that by word or act he made such known to Robinson. *See*

*State v. Graham*, 260 S.C. 449, 451, 196 S.E.2d 495, 495-96 (1973) ("Where a person voluntarily participates in . . . mutual combat for purposes other than protection, he cannot justify or excuse the killing of his adversary in the course of such conflict on the ground of self-defense . . .  unless, before the homicide is committed, he withdraws and endeavors in good faith to decline further conflict, and, either by word or act, makes that fact known to his adversary. . . ." (quoting 40 C.J.S. *Homicide* § 122, p. 996[1])).

**AFFIRMED.**[2]

**HUFF, SHORT, and WILLIAMS, JJ., concur.**

---

[1] *See also* 40 C.J.S. *Homicide* § 205 (2019) ("One who voluntarily participates in a mutual combat for purposes other than protection forfeits the right of self-defense unless, before the homicide is committed, the person withdraws and endeavors to decline further combat and makes that fact known to his or her adversary.").

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.