541 S.E.2d 254

The STATE, Respondent,

v.

Harry Wesley LOLLIS, Petitioner.

No. 25240.

Supreme Court of South Carolina.

Heard Dec. 5, 2000.
Decided Jan. 29, 2001.

Michael W. Barcroft, of Greenville, for petitioner.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Robert E. Bogan, all of Columbia; and Solicitor Robert M. Ariail, of Greenville, for respondent.

TOAL, Chief Justice:

On May 10, 2000, this Court granted Harry Wesley Lollis' ("Lollis") petition for a writ of certiorari to review the Court of Appeals' decision in *State v. Lollis*, Op. No. 99–UP–488 (S.C. Ct.App. filed September 29, 1999). We reverse.

### FACTS/PROCEDURAL BACKGROUND

On February 19, 1998, at 9:05 a.m.,the Liberty Fire Department responded to a fire at Lollis' mobile home. Later that day, the South Carolina Law Enforcement Division ("SLED") Arson Hotline received an anonymous tip concerning the fire. David Tafaoa ("Agent Tafaoa"), a SLED arson investigator, investigated the tip and opined the fire was intentionally set.

Agent Tafaoa's investigation revealed there were two areas of fire origination, the kitchen stove and another unconnected fire in the hallway. At the kitchen stove origination site, some type of paper product was rolled and placed between the skillet and the electric coil of the stove, and the eye of the skillet was turned to "high." Agent Tafaoa was further

convinced the fire was intentionally set because many personal items were missing from the mobile home. For example, there were nails and screws in the walls, but there was nothing hanging on them or located on the floor beneath them. Also, a gun rack and a soft gun case were found in the master bedroom, but neither contained a gun. Furthermore, there was nothing in the night stand drawers, there was only one pair of shoes in the closet, and there was no VCR, even though a VCR cable and a few tapes were found in the mobile home.

On the day of the fire, Lollis' common law wife, Tammy Burgess ("Burgess"), confessed in a statement to Agent Tafaoa that she was depressed about her husband's financial condition and intentionally started the fire by leaving a pan of grease on a hot eye of the stove. Burgess admitted Lollis was unaware of her plans to burn their home. She further confessed she took most of their valuables and placed them in a storage room they rented five days prior to the fire. According to Agent Tafaoa, Burgess burned the mobile home so the insurance company would pay the mortgage, their largest debt.

Lollis denies he had any involvement with the fire. He claims he never asked, encouraged, or aided Burgess in the burning of their home. According to Lollis, he had no reason to burn his home because it was being extensively remodeled when the fire occurred. Lollis claims he placed his personal items in the storage room on the day of the fire because he did not want his valuables ruined by drywall dust while he remodeled his home.

The State offered no evidence of Lollis' alleged financial trouble. On cross examination, the State's witness from the finance company testified Lollis was current on his mortgage payment at the time of the fire. Lollis also testified he was current on his accounts to Commercial Credit, Friendly Loans, State Farm Insurance, and Macy's Credit.

Lollis had an outstanding mortgage at the time of the fire. In October 1997, Lollis financed his home in order to pay for carpeting, delinquent taxes, and other matters. Because Lollis did not have homeowner's insurance, the finance company required that insurance be placed on the home in order to cover its mortgage. After the fire, the insurance company

fully paid Lollis' mortgage. However, Lollis did not receive any money for his personalty destroyed in the fire because the items were not insured.

Agent Tafaoa was convinced Lollis conspired with his wife to commit arson because Lollis possessed the key to the storage room, which contained many of their valuable personal items, when he accompanied Burgess to the law enforcement center. Lollis was arrested a week after the fire and charged with second degree arson.

On July 23, 1998, Lollis was convicted of second degree arson and sentenced to six years incarceration. The Court of Appeals affirmed the decision of the trial court. *State v. Lollis*, Op. No. 99–UP–488 (S.C. Ct.App. filed September 29, 1999). The Court of Appeals denied Lollis' Petition for Rehearing on November 16, 1999. Lollis now seeks an order reversing the Court of Appeals' decision and vacating his sentence. The following issue is before this Court on certiorari:

I. Did the Court of Appeals err by affirming the trial court's denial of Lollis' directed verdict motion?

## Law/Analysis

Lollis argues the Court of Appeals erred in affirming the trial court's denial of his directed verdict motion because the State did not present substantial circumstantial evidence Lollis was guilty of second degree arson.[1] We agree.

 On appeal from the denial of a directed verdict, this Court must view the evidence in the light most favorable to the State. *State v. Burdette*, 335 S.C. 34, 515 S.E.2d 525 (1999); *State v. Kelsey*, 331 S.C. 50, 62, 502 S.E.2d 63, 69

---

1. Second degree arson is defined as:

> A person who wilfully and maliciously causes an explosion, sets fire to, burns, or causes to be burned or aids, counsels, or procures the burning of a dwelling house, church or place of worship, a public or private school facility, a manufacturing plant or warehouse, a building where business is conducted, an institutional facility, or any structure designed for human occupancy to include local and municipal buildings, whether the property of himself or another, is guilty of arson in the second degree and, upon conviction, must be imprisoned not less than five nor more than twenty-five years.

> S.C.Code Ann. § 16–11–110 (Supp.1999).

(1998). A defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged. *State v. Brown,* 103 S.C. 437, 88 S.E. 21 (1916). If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, an appellate court must find the case was properly submitted to the jury. *State v. Pinckney,* 339 S.C. 346, 529 S.E.2d 526 (2000); *State v. Martin,* 340 S.C. 597, 533 S.E.2d 572 (2000). Accordingly, a trial judge should grant a directed verdict motion when the evidence merely raises a suspicion the accused is guilty. *State v. Martin, supra; see also State v. Muhammed,* 338 S.C. 22, 524 S.E.2d 637 (Ct.App.1999). "Suspicion" implies a belief or opinion as to guilt based upon facts or circumstances which do not amount to proof. *State v. Hyder,* 242 S.C. 372, 131 S.E.2d 96 (1963).

■ No direct evidence was adduced at trial linking Lollis to the fire. The State's case depended entirely on circumstantial evidence. When a motion for a directed verdict is made in a criminal case where the State relies exclusively on circumstantial evidence, "[t]he trial judge is required to submit the case to the jury if there is any substantial evidence which reasonably tends to prove the guilt of the accused, or from which his guilt may be fairly and logically deduced." *State v. Mitchell,* 341 S.C. 406, 535 S.E.2d 126 (2000); *see also State v. Stokes,* 299 S.C. 483, 484, 386 S.E.2d 241 (1989); *State v. Edwards,* 298 S.C. 272, 379 S.E.2d 888 (1989); *State v. Littlejohn,* 228 S.C. 324, 89 S.E.2d 924 (1955). The trial court is concerned with the existence or nonexistence of the evidence, not with its weight. *Mitchell,* 341 S.C. at 406, 535 S.E.2d at 127 (citing *Edwards, supra*).

■ The circumstantial evidence relied upon by the State is not substantial and merely raises a suspicion of guilt. The key pieces of circumstantial evidence relied upon by the State are: (1) the marital relationship between Burgess and Lollis; (2) Lollis' alleged financial trouble; (3) his placement of valuables in the storage room; and (4) his possession of the storage key on the day of the fire. According to the trial judge, Lollis' possession of the storage key is the most significant piece of circumstantial evidence:

I think that there's some substantial circumstantial evidence or sufficient circumstantial evidence, taking everything in the light most favorable to the State, the things that you mentioned, the relationship, the fact that he owned the property. *But I think one of the strongest things, facts, is that I think I heard testimony that Mr. Lollis had the keys to the storage locker in his pocket where all the stuff that was taken from the house was stored.* And I think that there is sufficient circumstantial evidence. I'd be required to submit it to the jury for their determination.

(emphasis added).

Even viewing the circumstantial evidence in the light most favorable to the State, the evidence presented does not reasonably tend to prove Lollis' guilt. First, Burgess admitted to starting the fire without assistance from Lollis, and without his knowledge. The State presented no evidence of an agreement between them. Second, the State presented no evidence of Lollis' alleged financial trouble. To the contrary, Lollis' testimony he was current on his debts at the time of the fire was uncontradicted. The State's witness from the finance company also testified Lollis was current on his mortgage payments. Furthermore, Lollis did not have insurance on his personal property lost in the fire. Finally, Lollis presented a plausible explanation for placing valuables in the storage room on the day of the fire—he was trying to protect them from drywall dust as he remodeled his home.

Lollis' mere possession of a storage key is not substantial circumstantial evidence he asked, aided, or procured Burgess to burn the dwelling. The possession of the key only indicates Lollis had access to the storage room on the day of the fire, it in no way demonstrates he aided Burgess with the fire. Lollis fully admits he was visiting the storage room when the fire occurred that morning. However, placing valuables in a storage room, without any other evidence linking him to the fire, does not indicate he aided his wife in destroying their home, especially when he offered a valid reason for placing the items in storage, and Burgess confessed she acted alone. Therefore, the possession of the key does nothing more than arouse suspicion of Lollis' guilt, and is an improper basis to deny a motion for directed verdict.

Finally, in similar arson cases relying on circumstantial evidence, appellate courts have affirmed denials of directed verdict motions when there is clear circumstantial evidence of financial trouble, such as a pending foreclosure proceeding or a significant change in an insurance policy prior to the fire. The instant case does not contain the same quantum of evidence because the State presented no evidence of Lollis' financial difficulty, and no evidence Lollis would receive some financial gain as a result of the fire. *See State v. Harry*, 321 S.C. 273, 468 S.E.2d 76 (Ct.App.1996) (directed verdict motion denied where there was evidence the fire was intentionally set, defendant purchased $25,000 homeowners' insurance two weeks prior to fire, and defendant provided his insurer with false information concerning his losses); *Carter v. Am. Mut. Fire Ins. Co.*, 297 S.C. 218, 375 S.E.2d 356 (Ct.App.1988) (trial judge correctly denied motion for directed verdict where there was evidence of defendant's financial difficulties, two mortgages on home, outstanding federal and state tax liens, and trouble paying credit card accounts); *see also State v. Chisholm*, 187 S.C. 275, 197 S.E. 308 (1938) (arson conviction affirmed where there was circumstantial evidence of a mortgage on the house, commencement of a foreclosure proceeding prior to the fire, and changes in insurance coverage by defendant's mother to include all personalty).

### CONCLUSION

Based on the foregoing, we **REVERSE** the Court of Appeals' decision.

MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.