555 S.E.2d 402

**The STATE, Respondent,**

v.

**Michael Paul BUCKMON, Appellant.**

**No. 25375.**

Supreme Court of South Carolina.

Heard Sept. 27, 2001.
Decided Nov. 13, 2001.

---

11.  *State v. King,* 158 S.C. 251, 155 S.E. 409 (1930), *overruled Brightman v. State,* 336 S.C. 348, 520 S.E.2d 614 (1999).

318

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, and Assistant Attorney General Derrick K. McFarland, all of Columbia, and Solicitor Barbara R. Morgan, of Aiken, for respondent.

Deputy Chief Attorney Joseph L. Savitz, III, and Assistant Appellate Defender Eleanor Duffy Cleary, of the South Carolina Office of Appellate Defense, of Columbia, for appellant.

Justice MOORE.

Appellant appeals his convictions for murder, attempted armed robbery, and criminal conspiracy. We affirm in part and reverse in part.

## FACTS

One December night, around 10:00 p.m., the unresponsive body of Minh Chapman (the victim) was found. The victim's body was found in the driver's seat of her car, which was parked outside the China Express Restaurant where she was manager. The victim's purse, containing approximately $1,400 of the restaurant's receipts, was beside her on the front car seat. After the police and rescue squad arrived, the victim was transported to the hospital. Initially, because there was no evidence of violence at the scene, she was thought to have suffered a heart attack. Later it was determined she had died from a single gunshot wound to the chest.

At trial, the fingerprint expert testified he was unable to positively identify anyone in this case.[1] No fingerprints were discovered on a spent shell casing found near the car. Further, no fingerprints were found on a .25 caliber semi-automatic pistol the police recovered from the home of the mother of Maurice Benning, one of appellant's co-defendants. The firearms examiner testified the fired shell casing found at the scene came from the pistol that was recovered. However, the examiner could not conclusively determine whether the .25 caliber bullet recovered from the victim's body had been fired by the recovered pistol.

A witness, Shirley Collins, testified she saw three people, sometime between 9:55 p.m. and 10:05 p.m., crossing the road in front of her while driving on the night of the murder. She testified the three people, whose race and sex she could not identify, were wearing dark clothes and were traveling in the direction of the China Express.

Temetrius Williams testified she drove appellant, Tunzy Sanders, and Benning around on the night of the murder. She drove them to a parking lot near the China Express to drop them off, but since it was raining they decided not to stay. She then drove the three to Jermaine Walker's house. She could not remember what they were wearing.[2]

---

1. Appellant was tried along with two co-defendants, Tunzy Sanders and Maurice Benning.

2. Temetrius admitted her testimony did not match her previous statement to police, but insisted the police had harassed her into making that statement.

Previously, Temetrius had made a statement to police which consisted of the following: When she arrived at appellant's house, appellant said he would bring her some money. She agreed to drive appellant, Sanders, and Benning, who were wearing black clothes and carrying walkie-talkies, to town. She parked her car at the House of Pizza, where they exited the car and then returned shortly thereafter. Upon returning, Benning stated, "Y'all can use it but please return it because it ain't mine." Thereafter, she dropped them off at Walker's house around 7:50 p.m. During this time, they said, "we're going to get some cheese tonight." In her statement, Temetrius told the police that cheese meant money.

Maurice Odom, who was imprisoned at the time, testified solely for the purpose of impeaching Temetrius. He testified he informed the police Temetrius had told him appellant had placed a gun to her head the night of the victim's murder and that all three men were wearing black clothes.

Jermaine Walker testified Temetrius dropped appellant, Sanders, and Benning off at his house. He stated the three had on "regular like blue jeans and shirts, dark clothes." Walker testified they stayed until about 9:30 or 10:00 p.m. While there, they stated they were going to "get a lick," which he took to mean there was going to be a burglary or a robbery. He could not remember who made that comment. When they left, Walker testified, they stated they were going to a friend's house and they walked in the direction of the China Express, which is the same direction in which the friend lived. Walker further stated that appellant also lived in that same direction.

A cellmate of Benning testified he and Benning discussed the China Express crime.[3] He testified Benning told him the following: (1) there were two pistols, (2) he was "out to get paid that night," (3) he was the look-out, (4) he said take her out if necessary, (5) he ran after the victim was shot, (6) he kept his mother's gun but threw the other gun away, (7) a few other places had been "cased" that night but without luck.[4]

---

3. The jury was instructed the cellmate's testimony was only to be considered as it related to Benning.

4. Officer Vince Padgett testified that, in a written statement, Benning said he went to the China Express, but that he had second thoughts and

Two other jailhouse informants testified about conversations they had with Sanders concerning the China Express crime. Both informants testified Sanders told them he planned to rob the victim and had shot and killed the victim. The testimony was only considered as it related to Sanders.

At the close of the State's case, appellant's directed verdict motion on all of the charges was denied. Appellant was convicted of murder, attempted armed robbery, and criminal conspiracy, and was sentenced to consecutive terms of life imprisonment for murder, twenty years for attempted armed robbery, and five years for criminal conspiracy.[5] Following the jury's verdict, appellant's motion for a new trial was denied.

## ISSUE

Did the trial court err by failing to direct a verdict of acquittal on the charges against appellant?

## DISCUSSION

On appeal from the denial of a directed verdict, we must review the evidence in the light most favorable to the State. *State v. McHoney*, 344 S.C. 85, 544 S.E.2d 30 (2001). A defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged. *Id.* If there is any direct evidence or substantial circumstantial evidence reasonably tending to prove the guilt of the accused, we must find the case was properly submitted to the jury. *Id.* Accordingly, a trial judge should grant a directed verdict motion when the evidence merely raises a suspicion the accused is guilty. *State v. Lollis*, 343 S.C. 580, 541 S.E.2d 254 (2001). *See also State v. Ballenger*, 322 S.C. 196, 470 S.E.2d 851 (1996) (trial court should grant directed verdict motion where jury

decided to leave. As he was running away, he heard a shot. He went back and retrieved the gun, which he placed back in his mother's room where she normally kept it.

5. Appellant's co-defendant Benning was acquitted of all charges except criminal conspiracy. His other co-defendant, Sanders, was found guilty as charged; however, his conviction was reversed by this Court on the grounds that his Sixth Amendment right to counsel was denied when his counsel was removed before trial. *State v. Sanders*, 341 S.C. 386, 534 S.E.2d 696 (2000). Sanders has since been retried and convicted for the murder of the victim.

would be speculating as to guilt of accused or where evidence is sufficient only to raise mere suspicion of guilt). "Suspicion" implies a belief or opinion as to guilt based upon facts or circumstances which do not amount to proof. *State v. Lollis, supra.*

### Murder and attempted armed robbery convictions

No direct evidence was adduced at trial linking appellant to the crimes of murder and attempted robbery. The State's case depended entirely on circumstantial evidence. When a directed verdict motion is made in a criminal case where the State relies exclusively on circumstantial evidence, the trial judge must submit the case to the jury if there is any substantial circumstantial evidence which reasonably tends to prove the guilt of the accused, or from which his guilt may be fairly and logically deduced. *State v. Lollis, supra; State v. Martin,* 340 S.C. 597, 533 S.E.2d 572 (2000). In reviewing a directed verdict motion, the trial judge is concerned with the existence of evidence, not with its weight. *State v. McHoney, supra; State v. Lollis, supra.*

The circumstantial evidence relied upon by the State is not substantial and merely raises a suspicion of guilt. The key pieces of circumstantial evidence relied upon by the State are: (1) Temetrius's written statement that a comment was made about getting some "cheese;" (2) Walker's testimony that a comment was made about getting a "lick;" (3) the fact appellant, Sanders, and Benning were together at least until they left Walker's house, around 9:30 or 10:00 p.m., and walked in the direction of the China Express; and (4) Shirley Collins's testimony that she saw three people running towards the China Express around 10:00 p.m.

Even viewing the circumstantial evidence in the light most favorable to the State, the evidence does not reasonably tend to prove appellant's guilt. While appellant was seen leaving Walker's residence and walking with Sanders and Benning towards the direction where the China Express was located, appellant's home was also located in that same direction. Additionally, while Collins testified she saw three individuals running towards the China Express, she stated she could not identify their race or their sex. None of the evidence presented by the State places appellant at the scene of the crime.

The trial court erred by not granting appellant's motion for a directed verdict on the charges of murder and attempted armed robbery because the State's evidence against appellant merely raised a suspicion appellant is guilty. *See, e.g., State v. Lollis, supra* (directed verdict should have been granted where circumstantial evidence presented by State was insufficient to submit case to jury); *State v. Mitchell,* 341 S.C. 406, 535 S.E.2d 126 (2000) (directed verdict should have been granted where fact defendant's fingerprint was on screen propped up against house did not prove entry where defendant had been in and around victim's house at least three times prior to burglary).

*Criminal conspiracy conviction*

A conspiracy is a combination or agreement between two or more persons for the purpose of accomplishing a criminal or unlawful object, or achieving by criminal or unlawful means an object that is neither criminal nor unlawful. *State v. Wilson,* 315 S.C. 289, 433 S.E.2d 864 (1993). The essence of a conspiracy is the agreement. *Id.* It may be proven by the specific overt acts done in furtherance of the conspiracy but the crime is the agreement. *Id.* To establish the existence of a conspiracy, proof of an express agreement is not necessary, and direct evidence is not essential, but the conspiracy may be sufficiently shown by circumstantial evidence and the conduct of the parties. *State v. Kelsey,* 331 S.C. 50, 502 S.E.2d 63 (1998).

Viewing all of the evidence in the light most favorable to the State, there was sufficient evidence to submit the issue of appellant's guilt on the charge of conspiracy to the jury. The evidence indicated appellant was involved in a discussion about "getting some cheese," (meaning money) in front of Temetrius.[6] Appellant was also involved in a discussion about "getting a lick," (meaning committing a burglary or a robbery) in front of Walker. While both Temetrius and Walker used the word "they" when stating who made those comments, a

---

6. At trial, Temetrius denied making this comment; however, whether she was credible at trial or when she gave her statement to the police goes to the weight of the evidence, which is not considered by the trial judge when ruling on a directed verdict motion. *See State v. McHoney,*

reasonable inference is that "they" meant all three defendants, including appellant, discussed committing an unlawful act. These conversations show evidence of criminal conspiracy in that appellant was part of a discussion about committing an unlawful act prior to the time in which the victim was killed. *See State v. Kelsey, supra* (proof of express agreement not necessary to establish existence of conspiracy); *State v. Wilson, supra* (essence of conspiracy is agreement). Other evidence that existed to show his possible involvement in a conspiracy was the fact appellant was with the other two defendants prior to the time the victim was killed. Therefore, evidence of appellant's involvement in a conspiracy existed such that the trial court properly denied his directed verdict motion on the charge of conspiracy.

Accordingly, appellant's murder and attempted armed robbery convictions are reversed and his conspiracy conviction is affirmed.

**AFFIRMED IN PART, REVERSED IN PART.**

TOAL, C.J., WALLER, BURNETT and PLEICONES, JJ., concur.

---

*supra; State v. Lollis, supra* (when reviewing directed verdict motion, trial judge is concerned with existence of evidence, not with its weight).