626 S.E.2d 898

The **STATE, Appellant,**

v.

**Roy BAILEY, Respondent.**

**No. 4079.**

Court of Appeals of South Carolina.

Submitted Nov. 1, 2005.

Decided Jan. 23, 2006.

Rehearing Denied March 2, 2006.

40

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Norman Mark Rapoport, of Columbia; and Solicitor Robert M. Ariail, of Greenville, for Appellant.

Robert Bethune King, Jr., of Anderson, for Respondent.

BEATTY, J.:

The State appeals the circuit court's decision to overturn Roy Bailey's magistrate court conviction for disorderly conduct. We affirm.[1]

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

## FACTS

On October 15, 2002, Roy Bailey and Calvin Ladd, one of Bailey's employees, pulled into the Speedway gas station to get gas for the company truck. The company had a gas card with Speedway, and Ladd got out of the truck, swiped the gas card on the pump, and pumped $29 worth of gas. After pumping the gas, Ladd informed Bailey that the pump did not print a receipt. The two went inside the gas station to request a receipt from the clerk. The clerk informed the two that the gas had not been paid for. A dispute arose over whether the transaction on the gas card actually processed, and the police were called.

Deputy Stacy Brooks arrived on the scene. He testified that when he entered the store, Bailey was "extremely argumentative and loud and boisterous" such that customers inside the store were stopping to stare. Brooks stated he attempted to calm Bailey and asked him to step outside the store. Deputy Giles Gladsen arrived at that point and remained outside with Bailey while Brooks returned inside the store to get the clerk's version of the events. After the clerk showed Brooks the computer screen indicating that Bailey did not pay for the gas, Brooks returned outside to inform Bailey that he needed to pay for the gas. Brooks testified that Bailey then became loud, boisterous, and argumentative with him and Gladsen. According to Brooks, although Bailey never used profanity, his behavior drew a lot of attention from people inside and outside the store and that Bailey was "absolutely disorderly within the view of the general public." Brooks also testified that after Bailey refused to pay for the gas, he "continued being loud and boisterous with myself and Deputy Gladsen. At which point we had no choice but to place him under arrest for at the time petit larceny and public disorderly conduct." [2] Deputy Gladsen similarly testified that Bailey was very loud and became disorderly and belligerent with him outside the store within close proximity of other people. Bailey was arrested for disorderly conduct. He complained of chest pains, and he was taken to the hospital for treatment.

---

2. Although the deputies intended to charge Bailey with petit larceny for failing to pay for the gas, Bailey's employee paid for the gas, and the charges were dropped.

The State rested its case after presenting the testimony of Deputies Brooks and Gladsen. Bailey immediately moved for a directed verdict, arguing the State failed to prove that Bailey used fighting words towards the police officers, and thus, he could not be convicted of disorderly conduct pursuant to *State v. Perkins,* 306 S.C. 353, 412 S.E.2d 385 (1991). The magistrate agreed *Perkins* may have some applicability, but he found there was evidence that Bailey was loud and boisterous in violation of section 16–17–530 such that the matter should go to the jury. After the denial of the motion for a directed verdict, Bailey presented evidence.[3]

Calvin Ladd, the employee with Bailey, testified that he and Bailey went inside the store to get a receipt for the gas card transaction. According to Ladd, he did "all the talking" with the store clerk regarding the gas card transaction, not Bailey, and the discussion was calm. Ladd stated Bailey was not loud with the deputies when they were talking outside, and he could not hear what was being said.

Bailey similarly testified at trial that Ladd was the person who spoke with the store clerk regarding the gas card. Bailey testified that once he was outside the store, Deputy Brooks threatened him, stating that Bailey should pay for the gas or else Brooks would find something with which to charge him. Bailey denied ever being loud or disrespectful with the deputies, and he stated that he only yelled when he was having chest pains and wanted medical attention. Bailey also denied there was a large crowd at the gas station watching the events. Bailey was convicted by the jury and sentenced to thirty days in jail, suspended upon the payment of a $258 fine.

Bailey appealed his conviction to the circuit court, arguing the magistrate court erred in: (1) failing to grant his motion for a directed verdict; and (2) failing to give his requested jury instructions, especially the one regarding "fighting words" which must be present in order to charge one with disorderly conduct towards a police officer pursuant to *Perkins.* After hearing arguments by both parties, the circuit court issued a form order reversing Bailey's conviction. The State appeals.

---

3. Bailey failed to renew his motion for directed verdict at the close of all evidence.

## STANDARD OF REVIEW

■ Appeals from magistrate court convictions are made to the circuit court. S.C.Code Ann. § 18–3–10 (Supp.2004). The circuit court, acting as the appellate court, reviews the matters raised in the notice of appeal. S.C.Code Ann. § 18–3–70 (Supp.2004) ("The appeal must be heard by the Court of Common Pleas upon the grounds of exceptions made and upon the papers required under this chapter, without the examination of witnesses. . . ."); *State v. Henderson*, 347 S.C. 455, 457, 556 S.E.2d 691, 692 (Ct.App.2001) ("In criminal appeals from magistrate or municipal court, the circuit court does not conduct a *de novo* review, but instead reviews for preserved error raised to it by appropriate exception."). The appellate court reviewing the circuit court appeal may review for errors of law only. *Id.*

## LAW/ANALYSIS

The State argues the circuit court erred in reversing Bailey's conviction because: (1) the directed verdict issue was not preserved; (2) it was error to rely on *Perkins*; and (3) there was sufficient evidence to support Bailey's conviction. We disagree.

### A. Preservation

■ The State initially argues the circuit court erred in reversing the magistrate court's denial of Bailey's motion for a directed verdict on an unpreserved ground because Bailey failed to renew his motion for a directed verdict after the presentation of all the evidence.[4]

The State raises this issue for the first time on appeal to this court. The State never brought the preservation issue, an additional sustaining ground, to the attention of the circuit court on appeal. *See I'on, L.L.C. v. Town of Mount Pleasant*, 338 S.C. 406, 420, 526 S.E.2d 716, 723 (2000) (noting that although a respondent may raise an additional sustaining

---

4. If a defendant presents evidence after the denial of his directed verdict motion at the close of the State's case, he must make another directed verdict motion at the close of all evidence in order to appeal the sufficiency of the evidence. *State v. Adams*, 332 S.C. 139, 144, 504 S.E.2d 124, 126–27 (Ct.App.1998).

44

ground on appeal, respondent may also "abandon an additional sustaining ground ... by failing to raise it in the appellate brief."). Instead, both Bailey and the State vigorously argued the merits of whether Bailey was entitled to a directed verdict based upon *Perkins*. The circuit court reviewed the issues raised before it and reversed Bailey's conviction.

Because the preservation issue was never brought to the attention of the circuit court on appeal, no ruling on the matter was ever issued. Further, nothing in the record indicates the State brought the matter to the attention of the circuit court in a petition for rehearing. Accordingly, it is not appropriate for this court to review it. *See City of Columbia v. Ervin*, 330 S.C. 516, 519–20, 500 S.E.2d 483, 485 (1998) (noting that the Court of Appeals should not have addressed an issue on appeal where Ervin failed to raise the issue to the circuit court as intermediate appellate court); *Condor, Inc., v. Board of Zoning Appeals*, 328 S.C. 173, 178 n. 4, 493 S.E.2d 342, 344 n. 4 (1997) (holding that an issue which was not presented in the verified petition of appeal to the circuit court was not properly preserved for review by the supreme court); *see also Wilder Corp. v. Wilke*, 330 S.C. 71, 75–76, 497 S.E.2d 731, 733 (1998) (noting in dicta that petitioner had preservation problems of its own where petitioner complained that issues reviewed by the Court of Appeals were not preserved for appellate review, but petitioner failed to "raise all of these issues to the Court of Appeals in its petition for rehearing;" the court further noted that it believed the issues were preserved for review by the Court of Appeals).

**B. Propriety of Directed Verdict**

The State argues the circuit court erred in reversing the denial of Bailey's motion for a directed verdict because it erroneously relied upon *Perkins* and because enough evidence existed to support Bailey's guilt. We disagree.

On appeal from the denial of a directed verdict, an appellate court must view the evidence in the light most favorable to the State. *State v. Lollis*, 343 S.C. 580, 583, 541 S.E.2d 254, 256 (2001); *State v. Burdette*, 335 S.C. 34, 46, 515 S.E.2d 525, 531 (1999); *State v. Kelsey*, 331 S.C. 50, 62, 502 S.E.2d 63, 69 (1998). When ruling on a motion for a directed verdict, the

trial court is concerned with the existence of evidence, not its weight. *Burdette,* 335 S.C. at 46, 515 S.E.2d at 531; *State v. Wakefield,* 323 S.C. 189, 197, 473 S.E.2d 831, 835 (Ct.App. 1996). "If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, an appellate court must find the case was properly submitted to the jury." *Lollis,* 343 S.C. at 584, 541 S.E.2d at 256. "A defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged." *State v. Rosemond,* 356 S.C. 426, 429, 589 S.E.2d 757, 758 (2003).

■ Bailey was charged with public disorderly conduct. The pertinent portion of the public disorderly conduct statute provides that it is a misdemeanor for a person to "be found ... at any public place or public gathering ... otherwise conducting himself in a disorderly or boisterous manner...." S.C.Code Ann. § 16–17–530(a) (2003). However, there is an additional requirement that "fighting words" must be used when one is charged with disorderly conduct towards a police officer. *See State v. Perkins,* 306 S.C. 353, 355, 412 S.E.2d 385, 386 (1991) ("[A]ppellants cannot be punished under § 16–17–530(a) for voicing their objections to sheriff's officers where the record indicates no use of fighting words."); *see also City of Landrum v. Sarratt,* 352 S.C. 139, 144, 572 S.E.2d 476, 479 (Ct.App.2002) (noting the *Perkins* court narrowly applied the fighting words exception to "cases involving words addressed to a police officer"); *State v. LaCoste,* 347 S.C. 153, 163–64, 553 S.E.2d 464, 470 (Ct.App.2001) (finding there was ample evidence of disorderly conduct to support the trial court's denial of the motion for a directed verdict where the defendant shouted obscenities at officers, threw his hands up in a hostile manner, refused to comply with officers' demands, challenged the officers, and taunted the officers about their inability to get him under control); *City of Columbia v. Brown,* 316 S.C. 432, 436–37, 450 S.E.2d 117, 119–20 (Ct.App. 1994) (noting that the defendant's actions met the definition of "fighting words" where he shouted obscenities and racial slurs at police officers on a public street, he was not challenging any police action, and he was repeatedly told by the officers to leave the area prior to arresting him for loitering).

In *Perkins,* the two appellants went to the sheriff's office to obtain a copy of an incident report in order to obtain a warrant from the magistrate. After being told that the incident report was not yet available, the appellants became upset and raised their voices inside the sheriff's office. They were arrested upon leaving the sheriff's office and were charged with disorderly conduct. In reversing the appellants' convictions, our state supreme court noted as follows:

> "[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston v. Hill,* 482 U.S. 451, 461, 107 S.Ct. 2502, 2505, 96 L.Ed.2d 398, 412 (1987). The State may not punish a person for voicing an objection to a police officer where no "fighting words" are used. *Norwell v. Cincinnati,* 414 U.S. 14, 94 S.Ct. 187, 38 L.Ed.2d 170 (1973). To punish only spoken words addressed to a police officer, a statute must be limited in scope to fighting words that "by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Hill,* 482 U.S. at 461–62, 107 S.Ct. at 2509–10, 96 L.Ed.2d at 412 (quoting *Lewis v. City of New Orleans,* 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974)). As further noted by the United States Supreme Court, the "fighting words" exception may require narrow application in cases involving words addressed to a police officer "because a properly trained officer may reasonably be expected to exercise a higher degree of restraint than the average citizen." *Hill,* 482 U.S. at 462, 107 S.Ct. at 2510, 96 L.Ed.2d at 412. As stated by the high court: The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state. *Id.* at 462–63, 107 S.Ct. at 2510, 96 L.Ed.2d at 412–13.

*Perkins,* 306 S.C. at 354–55, 412 S.E.2d at 386.

In the present case, the circuit court relied upon *Perkins* in reversing Bailey's conviction. The court's form order stated "Officer's [sic] clearly arrested Mr. Bailey for being boisterous toward the officers. Under *Perkins,* the case is reversed as a matter of law." Thus, it appears the circuit court ruled Bailey was entitled to a directed verdict pursuant to *Perkins.*

Viewing the evidence in the light most favorable to the State, there was evidence to support a finding that Bailey's conduct *inside* the store amounted to "disorderly conduct" such that a directed verdict would be improper. However, Bailey was not arrested for his conduct inside the store. Despite the deputies' testimony that Bailey was disorderly in view of the public, Bailey was not placed under arrest until *after* his confrontation with the deputies outside. There is no evidence in the record that anything Bailey said to the deputies amounted to "fighting words." Thus, pursuant to *Perkins*, Bailey's actions outside did not amount to disorderly conduct. Bailey was entitled to a directed verdict on the disorderly conduct charge. Accordingly, we find the circuit court did not commit an error of law in reversing Bailey's conviction.

## CONCLUSION

Because Bailey was arrested for being boisterous with the deputies and there was no evidence that his language amounted to "fighting words," the circuit court correctly reversed Bailey's conviction for disorderly conduct. The circuit court's decision is

**AFFIRMED.**

HEARN, C.J., and HUFF, JJ., concur.