629 S.E.2d 361

**The STATE, Respondent,**

v.

**John L. McCOMBS, Appellant.**

**No. 26137.**

Supreme Court of South Carolina.

Heard March 8, 2006.

Decided April 17, 2006.

Deputy Chief Attorney Wanda H. Carter, of Office of Appellate Defense, of Columbia, for appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; and Solicitor David Michael Pascoe, Jr., of St. Matthews, for Respondent.

Justice MOORE:

Appellant was found guilty for intimidation of a court official and was sentenced to seven years in prison. He argues the trial court erred by failing to grant a directed verdict in his favor. We certified this case from the Court of Appeals pursuant to Rule 204(b), SCACR, and now affirm.

## FACTS

Donna Sands was appointed to represent appellant in a post-conviction relief (PCR) action. After appellant received an unfavorable ruling from Judge Diane Goodstein in the case, he wrote Sands three letters. Sands gave the third letter she received to Judge Goodstein because appellant wished to terminate her representation and because she was concerned about an alleged threat to her and Judge Goodstein contained in the letter. Sands filed a motion for reconsideration on appellant's behalf after receiving the letter, but she was ultimately relieved from representing him.

Appellant's third letter stated, in pertinent part:

Dear Donna,

... I am most highly displeased over your lack of loyalty & professionality in handling my case.... I must hereby terminate you from my case ...

Do not do anything else, since you don't know how to force a ruling out of that incipant [sic] judge, who made that personally biased comment from the bench, when she stated that she had no intention of ordering my release. I will not stop until I put you & her out of practice, since you personally acquise [sic] with her actions. Send me that file....

Judge Goodstein testified that, after receiving the letter from Sands, she asked the solicitor's office to investigate the alleged threat. Following the investigation, Judge Goodstein was shown the other two letters written by appellant[1] and she learned appellant was scheduled to be released from prison in

---

1. The first letter appellant wrote to Sands contained the following statements: "I hope to see you in Hell, because you are not going to like what I have to do just for you.... There is a price for everything, and you will find it particularly bitter."

The second letter contained the following statements:

... I have a plan for you. I hope that you enjoyed that $500 you got for selling me out, because you will regret what you have done, and I will guarantee it.... How valuable is your practice to you? ... If you think that you can do anything to a walking dead man, hit me with your best shot, because I will handle you.... I am set to destroying you, just like pulling the wings off of a fly, do you understand this? For whom does the bell toll? ... By your own incompetent hand are you destroyed, when you reap as you have sown. Do you think that I will at all spare your images?

approximately two years. She testified she already knew that appellant had been convicted of a violent crime. She believed appellant intended to threaten the court and interfere with the court's process. Although appellant did not directly contact her, Judge Goodstein stated she personally felt threatened and intimidated by him given his history.[2] Further, she said she was frightened by the three letters, which she found to be "absolutely vicious," appellant's release date, and his statement to a SLED officer. She interpreted appellant's statement in the letter that he would "put . . . her out of practice" as a threat to her personally and not to her law license. Judge Goodstein testified that when she subsequently received the motion to reconsider in appellant's PCR case, she recused herself because she could not be fair and impartial given that appellant had injected her personally into the case.

As part of the investigation into the alleged threat, SLED Officer John Garrison interviewed appellant while he was incarcerated. When Garrison asked appellant if, when he got out, he intended to go see Sands and Judge Goodstein, appellant replied, "I don't know, I think I'll have to go see them." Garrison testified appellant made no other statement during the interview that was threatening other than that he was going to see Judge Goodstein when he was released. Garrison stated his opinion was that a threat had been made against Judge Goodstein.

Following the close of the State's evidence, appellant's directed verdict motion was denied. The jury returned a verdict of guilty and appellant moved for a new trial. The court denied the motion because there was evidence to support the jury's verdict.

## ISSUE

Did the trial court err by failing to grant a directed verdict in appellant's favor?

## DISCUSSION

■ Appellant argues the trial court erred by failing to grant a directed verdict in his favor where there was insuffi-

---

2. Appellant was incarcerated in approximately 1981 for criminal sexual conduct and assault and battery of a high and aggravated nature.

cient evidence of his guilt.[3]

 A defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged. *State v. McHoney*, 344 S.C. 85, 544 S.E.2d 30 (2001). If there is any direct evidence or substantial circumstantial evidence reasonably tending to prove the guilt of the accused, we must find the case was properly submitted to the jury. *State v. Buckmon*, 347 S.C. 316, 555 S.E.2d 402 (2001). On appeal from the denial of a directed verdict, we must view the evidence in the light most favorable to the State. *State v. McHoney, supra.*

Appellant was charged with intimidation of a court official pursuant to S.C.Code Ann. § 16–9–340 (2003). Section 16–9–340 states:

(A) It is unlawful for a person by threat or force to:
 (1) intimidate or impede a judge ... in the discharge of his duty as such; or
 (2) destroy, impede, or attempt to obstruct or impede the administration of justice in any court.

The trial court did not err by denying the motion for a directed verdict. There was evidence reasonably tending to prove appellant's guilt of the stated crime. The statements in the letters combined with appellant's violent history, his impending release date, and his statement to Officer Garrison that he was going to see Judge Goodstein after he was released, qualified as a threat and an attempt to interfere with the court's process. Judge Goodstein's ability to discharge her duty as a judge was impeded when she had to recuse herself from appellant's case.

## CONCLUSION

Viewing the evidence in the light most favorable to the State and because there is evidence sufficient to survive a directed

---

3. The State argues the issue is not preserved for review because appellant did not renew his motion for a directed verdict at the close of all the evidence. However, because appellant did not present any evidence, he was not required to renew that motion. *Cf. State v. Bailey*, 368 S.C. 39, 626 S.E.2d 898, 900, n. 4 (Ct.App.2006) (if defendant presents evidence after denial of his directed verdict motion at the close of the State's case, he must make another directed verdict motion at the close of all evidence in order to appeal the sufficiency of the evidence).

verdict motion, the trial court appropriately submitted this case to the jury. Therefore, the decision of the trial court is

**AFFIRMED.**

TOAL, C.J., WALLER, PLEICONES, JJ., and Acting Justice J. MARK HAYES, II, concur.