# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of the Care and Treatment of Christopher Taft, Petitioner.

Appellate Case No. 2013-002246

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Richland County
Alison Renee Lee, Circuit Court Judge

---

Opinion No. 27543
Heard April 9, 2015 – Filed July 1, 2015

---

## REVERSED

---

Appellate Defender LaNelle C. DuRant, of Columbia, for Petitioner.

Attorney General Alan M. Wilson and Senior Assistant Deputy Attorney General Deborah R.J. Shupe, of Columbia, for Respondent.

---

**JUSTICE HEARN:** In this civil commitment proceeding, Christopher Taft was found to be a sexually violent predator and was committed to the South Carolina Department of Mental Health. He now argues the trial court should have

granted his motion for directed verdict because the State failed to present sufficient evidence under the Sexually Violent Predators Act (the SVP Act) that he was presently likely to reoffend if not confined.  We agree and reverse.

## FACTUAL/PROCEDURAL HISTORY

The underlying facts of this case are tragic and disturbing.  Taft grew up in a family rife with intergenerational incest.  As a young child, he was sexually abused by his aunts, uncles, and a number of older cousins.  As Taft went through puberty, he became an abuser himself of his younger siblings.

In June of 2006, at age fifteen, Taft pled guilty to three counts of assault and battery of a high and aggravated nature, stemming from the sexual assault of his sisters, then five and six, and his nine-year-old brother.  Taft was committed to the Department of Juvenile Justice (DJJ) for six months, and the family court suspended his sentence upon placement in a sex offender treatment facility and probation after his release.  He was admitted to Generations Group Home, a facility for juvenile sex offenders in November 2006.  After he was discharged from Generations in June 2007, he was remanded to DJJ until his release in July 2008.  Upon his release from DJJ, he was returned home to live with the same siblings he had previously assaulted.

In March of 2010, Taft, then nineteen, pled guilty to two counts of lewd act on a minor after being charged with two counts of CSC for fondling and engaging in intercourse with his eight and nine-year-old sisters.  He received concurrent sentences of fifteen years' imprisonment on both charges, suspended to three years' incarceration and five years' probation.

The State brought a civil commitment proceeding pursuant to the SVP Act in July 2010.  After an initial probable cause hearing, the court appointed Dr. Rebecca Jackson to evaluate whether Taft met the criteria for civil commitment.  After examining Taft, Dr. Jackson issued a report on November 19, 2010, concluding he did not.

The State sought another expert and retained Dr. Gregg Dwyer to evaluate Taft.  However, Dr. Dwyer was in the process of relocating from the University of South Carolina School of Medicine to the Medical University of South Carolina and had not yet finished setting up his new lab.  Consequently, Dr. Dwyer was unable to complete the evaluation within the sixty-day time limit required by

statute. On February 17, 2011, the final day before the time limit expired, the State filed a motion for a continuance, requesting more time to allow Dr. Dwyer to complete his evaluation.

Taft objected to the request for a continuance, arguing the SVP Act required that a trial be conducted within ninety days of the court-appointed evaluation, and the State's claim that its expert did not have time to set up his new lab did not constitute good cause. Taft contended the State should have realized earlier that Dr. Dwyer could not meet the statutory deadline and obtained another expert. The trial court disagreed and granted the motion. The court directed the evaluation be completed by May 2, 2011, and set the trial for May 23, 2011.

Prior to commencement of the trial, Taft moved to exclude the State's second evaluation because even though it had been timely submitted pursuant to the trial court's latest order, it was authored by both Dr. Dwyer and a Dr. William Mulbry. Dr. Mulbry had been retained due to the continued difficulties with Dr. Dwyer's schedule. Taft argued the report should be excluded because the trial court's order granting the continuance specifically authorized only Dr. Dwyer to evaluate him. The court agreed, and excluded the report. The trial court also excluded any testimony regarding the second evaluation except from Dr. Dwyer, who the State acknowledged was not prepared to testify.

Taft subsequently moved for summary judgment, arguing that absent any evaluation or testimony from Dr. Dwyer, the State failed to provide any evidence that Taft was a sexually violent predator. He argued the only remaining evidence was the report and testimony of Dr. Jackson, who had concluded that Taft was not a sexually violent predator. In response, the State argued that it still had the reports of Drs. Geoffrey McKee and Jack Luadzers who had concluded Taft was a sexually violent predator in connection with his prior criminal investigation in 2009. Taft, however, asserted those two reports were outdated and inadmissible because they were not probative of whether he was *currently* a sexually violent predator. The trial court disagreed with Taft, finding the prior evaluations were admissible; it therefore denied the motion.

At trial, the State offered the testimony of Dr. McKee, who had examined Taft nearly two years earlier in June 2009. Dr. McKee discussed Taft's ability to accept and utilize the treatment he had received, and testified about the previous sexual abuse Taft had himself endured beginning at age five. Dr. McKee opined that based upon his previous evaluation of Taft, he concluded Taft suffered from

"pedophilia, sexually attracted to females and nonexclusive type,"[1] and that based on that prior evaluation, Taft met the statutory definition of a sexually violent predator. He testified that in reaching these conclusions he had conducted several risk assessment tests to measure Taft's likelihood of reoffending; based on Taft's score on these tests, McKee determined he had a moderate to high risk of sexual recidivism.

The court-appointed expert, Dr. Rebecca Jackson, also testified. Unlike Dr. McKee, Dr. Jackson's opinion was based on her evaluation of Taft in this civil commitment proceeding. Dr. Jackson opined Taft suffered from pedophilia, limited to incest, based on her finding that there was no evidence he was aroused by other females or other children. Dr. Jackson testified that she performed one risk assessment test which scored him as having a twenty-five percent chance of reoffending in five years and a thirty-three percent chance of reoffending over a ten-year period. However, she testified that in her professional opinion, Taft did not meet the criteria of the SVP Act, and other measures short of confinement could effectively prevent him from victimizing his sisters again.

At the close of the State's case, Taft moved for directed verdict, arguing the State failed to put forth any evidence that Taft *presently* suffered from a mental abnormality that made him likely to reoffend. The court denied the motion, concluding it was a jury issue. The jury ultimately found Taft was a sexually violent predator. Taft moved for judgment notwithstanding the verdict, again arguing lack of evidence, but the trial court denied the motion.

On appeal, Taft contended the trial court erred in failing to direct a verdict in his favor based on the lack of expert testimony that he was currently a sexually violent predator. The court of appeals affirmed in an unpublished opinion. *In re Taft*, Op. No. 2013-UP-334 (S.C. Ct. App. filed Aug. 7, 2013). This Court granted certiorari.

## ISSUE PRESENTED

Did the court of appeals err in affirming the trial court's failure to direct a verdict in favor of Taft?

---

[1] Dr. McKee's diagnosis indicated Taft is attracted to children under the age of thirteen, predominately female, and his attraction is nonexclusive so he is interested in children and adults.

## LAW/ANALYSIS

Taft argues the court of appeals erred in affirming the trial court's denial of his motion for directed verdict. Specifically, Taft argues the State failed to put forth evidence he satisfied the definition of a sexually violent predator because neither expert testified that he had a present risk of reoffending. We agree.

On appeal from the denial of a defendant's directed verdict motion, the appellate court may only reverse the trial court if there is no evidence to support the trial court's ruling. *In re Matthews*, 345 S.C. 638, 646, 550 S.E.2d 311, 315 (2001). In considering a directed verdict motion, the trial court is concerned with the existence or nonexistence of evidence, not its weight. *State v. Cherry*, 361 S.C. 588, 593, 606 S.E.2d 475, 477–78 (2004). "A defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged." *State v. McKnight*, 352 S.C. 635, 642, 576 S.E.2d 168, 171 (2003). Thus, a trial judge should grant a motion for directed verdict when the evidence presented merely raises a suspicion of guilt. *State v. Lollis*, 343 S.C. 580, 584, 541 S.E.2d 254, 256 (2001). "'Suspicion' implies a belief or opinion as to guilt based upon facts or circumstances which do not amount to proof." *Id.*

The State bears the burden of proving a person is a sexually violent predator. *In re Care & Treatment of Corley*, 353 S.C. 202, 206, 577 S.E.2d 451, 453 (2003). Pursuant to the SVP Act, a sexually violent predator is defined as a person who: "(a) has been convicted of a sexually violent offense; and (b) suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment." *In re Care & Treatment of Harvey*, 355 S.C. 53, 60, 584 S.E.2d 893, 896 (2003). A person is considered likely to engage in acts of sexual violence if "the person's propensity to commit acts of sexual violence is of such a degree as to pose a menace to the health and safety of others." S.C. Code Ann. § 44-48-30(9) (2002 and Supp. 2014).

It is undisputed Taft was convicted of a sexually violent offense and suffers from a mental abnormality; the sole question is whether the State produced evidence that his mental abnormality is such that he is *presently* likely to reoffend if not confined. The thrust of Taft's argument is that the State's expert testimony established only that he had a risk of reoffending in 2009 when he was evaluated in conjunction with the underlying criminal charges, and not that he had a risk of reoffending in 2011 in the context of this civil commitment proceeding. The State contends the issue of present risk goes to the weight—not existence—of the

evidence, and thus the trial court properly submitted the question to the jury.

We find the State's evidence devoid of proof Taft has a present risk to reoffend. Although the State's expert, Dr. McKee, stated that Taft met the definition of a sexually violent predator in 2009, he consistently refused to render a current diagnosis. Dr. McKee expressly testified that he "[did not] have the personal contact and the personal interview that [he] would need to do to form a current and active opinion" because "to be able to say whether [Taft] is a sexually violent predator now, [he] would have to be able to evaluate [him]." In fact, Dr. McKee admitted on cross-examination that "as of [that day] he could not give an opinion as to whether or not [Taft] is a sexually violent predator."

A civil proceeding to commit an individual, perhaps for life, following service of his criminal sentence, is an extraordinary remedy. Although this Court has repeatedly held the Act constitutional, we decline to construe it in a manner which would lessen the State's burden of proof. The General Assembly has carefully written our SVP Act to lay out exactly what is required to establish that someone is a sexually violent predator; the State must prove, beyond a reasonable doubt that the individual is *presently* a sexually violent predator. *See State v. Gaster*, 349 S.C. 545, 551, 564 S.E.2d 87, 90 (2002) (holding, in the context of an ex post facto challenge, that the SVP Act "permits involuntary confinement based upon the determination the person *currently* suffers from both a mental abnormality or personality disorder and is likely to engage in acts of sexual violence" (emphasis added)). Today, we give force to this requirement.

We decline to accept the State's argument that an expert's evaluation from a prior criminal proceeding is sufficient to prove an individual is a sexually violent predator. If this were so, it would obviate any possibility of rehabilitation during incarceration. Further, it would violate the legislature's statutory scheme, which clearly envisions a new civil commitment proceeding based upon current evidence that the individual suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment. In this case, Dr. Jackson opined that Taft did not meet the definition of a sexually violent predator under the SVP Act and Dr. McKee testified he could not say Taft was presently a sexually violent predator because he had not evaluated him since 2009. Accordingly, we find the State failed to present sufficient evidence that Taft had a current risk of reoffending which would allow a jury to conclude he was a sexually violent predator.

## CONCLUSION

Based on the foregoing, we find the trial court erred in denying Taft's motion for directed verdict. We therefore reverse.[2]

**TOAL, C.J., PLEICONES, BEATTY and KITTREDGE, JJ., concur.**

---

[2] Because our holding on this issue is dispositive, we decline to address Taft's additional argument that the court of appeals erred in affirming the trial court's grant of a continuance. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (noting an appellate court need not address remaining issues where one issue is dispositive).