**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

The State, Respondent,

v.

Andre Junior Covington, Appellant.

Appellate Case No. 2022-000831

———————

Appeal From Chesterfield County
Michael G. Nettles, Circuit Court Judge

———————

Unpublished Opinion No. 2025-UP-024
Heard November 5, 2024 – Filed January 29, 2025

———————

**AFFIRMED**

———————

Senior Appellate Defender Kathrine Haggard Hudgins and Appellate Defender Jordan Millen Wayburn, both of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy Attorney General Donald J. Zelenka, Senior Assistant Deputy Attorney General Melody J. Brown, Assistant Attorney General William Joseph Maye, all of Columbia and Solicitor William B. Rogers, Jr., of Bennettsville, for Respondent.

———————

**PER CURIAM:**  Andre Junior Covington appeals his conviction for murder and sentence of forty-five years' imprisonment.  On appeal, he argues the trial court erred in (1) admitting the video deposition of Fausten Bruce Romero, a fellow inmate, and publishing the contents of a letter Romero testified he received from Covington offering to make a witness disappear when the evidence did not meet an exception pursuant to Rule 404(b) and the probative value of the evidence was substantially outweighed by the danger of unfair prejudice and (2) failing to direct a verdict of acquittal.  We affirm.

## FACTS

On the evening of June 2, 2019, Terris Parsons (Victim) communicated with Covington via phone calls and text messages, appearing to plan to meet up.  Video surveillance recordings indicated Victim drove his car to Covington's house around 9 p.m.  At 10:06 p.m., Victim's car left Covington's house; one minute later, Covington's car followed behind it.  Video recordings showed the two cars traveling toward Morven, North Carolina.  Officers interviewed Covington twice, and during both interviews, Covington denied having contact with Victim on the day of his disappearance.

Lillie Moore, Covington's partner, testified she did not know Victim, did not see him in the house that night, and had never seen his car until she saw it at the house that night.[1]  She explained that around 9 p.m. on the night of the incident, Covington reluctantly asked her to follow him in his car while he drove Victim's car.  Moore testified Covington led her to a store in Morven, where he told her to drive out of the parking lot and pick him up from the roadside.  She explained she did not see where Covington left the car, and she did not know "what was going on."  Moore drove them home in Covington's car.  The State presented evidence that Covington had burned something in his back yard on the night of Victim's disappearance.  Additionally, Moore testified Covington came in and out of the house all night.  The next morning, Covington "cleaned the yard" and "dumped whatever [he] cleaned."  However, Moore also testified that Covington was acting "normal" and was not acting strange.

The next day, Moore and Covington drove back to Morven in a different car owned by Covington, so Covington could move Victim's car.  Covington picked up Victim's car, and Moore followed him to an abandoned house in Florence where

---

[1] Moore's video testimony was recorded prior to trial and was published to the jury without objection.

they left it; they then drove home in Covington's car.  On June 25, Moore led officers to the abandoned house where Victim's "vandalized" car was "being hidden."  However, there was no evidence of Victim there.  No one has seen or heard from Victim since that night, and Victim's body has not been found.

At trial, Romero's video testimony deposition was published to the jury with redactions that were agreed upon by both parties.[2]  In the deposition, Romero testified he and Covington were housed next to each other in the jail and would communicate often through the jail cell vents.  He stated Covington personally passed him an arrest warrant charging Covington with kidnapping Victim, along with a letter.[3]  Romero explained the arrest warrant for kidnapping (1) stated "something about someone being missing," (2) indicated "the last person that the missing person was with" was Covington, and (3) mentioned Victim by name.[4]  The State read portions of the accompanying letter to the jury.  The redacted letter stated:

> First, let me tell you how I can help you in a major way.
> If they don't have any witnesses they don't have a case.
> You follow me.  I can make that happen.  Trust me.  That
> can be done while you're out on bond for the State bonds
> for the State charge, which, you know, the charge will get
> dismissed because there is no one to take the stand
> against you.  Are you still with me.
>
> Once again, I'm telling you that if you got out, there will
> be nobody to take the stand. I can make the witnesses
> disappear.  They wouldn't have a case because they have
> to be able to take the stand.  Trust me.  I want this paper
> back.

At the close of the State's case, Covington moved for a directed verdict.  The trial court denied the motion.  The jury thereafter found Covington guilty, and the trial court sentenced him to forty-five years' imprisonment.

---

[2] Both parties had agreed to take the video deposition of Romero prior to trial and subsequently relieved him of his subpoena.  Covington objected to the video but agreed to the redactions based on the court's ruling to admit it.

[3] Covington was originally charged with kidnapping Victim.  The charge was later dropped.

[4] The kidnapping arrest warrant was not entered into evidence and was not part of the record on appeal.

**ANALYSIS**

1. We hold the trial court properly admitted the video deposition of Romero and the letter under Rule 404(b), SCRE. First, we find the trial court properly found the letter, in combination with the arrest warrant and Romero's testimony, was relevant. *See State v. Clasby*, 385 S.C. 148, 154, 682 S.E.2d 892, 895 (2009) ("As a threshold matter, the trial [court] must initially determine whether the proffered evidence is relevant . . . ."); Rule 401, SCRE ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). Romero testified Covington personally delivered the letter and warrant to him. We hold the letter and arrest warrant, when read together, tend to show Covington had knowledge of, and was potentially involved in, Victim's disappearance because the arrest warrant mentioned Victim by name and stated Covington was the last person known to have contact with him.

Next, we find the combination of the letter along with the arrest warrant was probative of Covington's identity as the perpetrator of the crime against Victim under Rule 404(b). *See* Rule 404(b), SCRE ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."); *id.* ("It may, however, be admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent."); *State v. Brooks*, 341 S.C. 57, 61, 533 S.E.2d 325, 327 (2000) ("The record must support a logical relevance between the prior bad act and the crime for which the defendant is accused."). Romero testified Covington passed him the arrest warrant, which charged Covington with kidnapping Victim, along with the letter. The warrant stated Covington was the last person to be with Victim on the night of his disappearance. Further, the letter stated Covington could make people "disappear."

Finally, we find the letter's probative value is not substantially outweighed by the danger of unfair prejudice to Covington. *See* Rule 403, SCRE ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."); *Brooks*, 341 S.C. at 62, 533 S.E.2d at 328 (stating evidence "must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant"). The combined letter and arrest warrant were highly probative circumstantial evidence because Covington impliedly identified himself as Victim's killer by suggesting that he made Victim disappear; this was an allowable inference for the jury to make. *See State v. Bright*, 323 S.C. 221, 226, 473 S.E.2d 851, 854 (Ct. App. 1996)

("Unfair prejudice from the introduction of evidence occurs when it has an undue tendency to induce a decision on an improper basis.").  Accordingly, we hold the trial court did not err in admitting Romero's video deposition.

2. We hold the trial court did not err in failing to direct a verdict.  When viewing the evidence in the light most favorable to the State, we find there was substantial circumstantial evidence that reasonably tended to prove Covington murdered Victim.  *See State v. Rogers*, 405 S.C. 554, 562, 748 S.E.2d 265, 270 (Ct. App. 2013) ("In reviewing a denial of a directed verdict, we must view the evidence in the light most favorable to the State."); *State v. Bailey*, 368 S.C. 39, 44-45, 626 S.E.2d 898, 901 (Ct. App. 2006) ("When ruling on a motion for a directed verdict, the trial court is concerned with the existence of evidence, not its weight."); *Rogers*, 405 S.C. at 562, 748 S.E.2d at 270 ("If there is any direct evidence, or if there is substantial circumstantial evidence, that reasonably tends to prove the defendant's guilt, we must find the trial court properly submitted the case to the jury.").  The State presented evidence that (1) Victim drove to Covington's house; (2) Victim's last known location was Covington's house; (3) Covington denied seeing Victim that night, yet hid Victim's car; and (4) Victim has never been seen or heard from again.  *See* S.C. Code Ann. § 6-3-10 (2015) ("'Murder' is the killing of any person with malice aforethought, either express or implied."); *State v. Weston*, 367 S.C. 279, 293, 625 S.E.2d 641, 648 (2006) ("In a murder case, the corpus delicti consists of two elements: the death of a human being, and the criminal act of another in causing that death."); *State v. Gallman*, 79 S.C. 229, 60 S.E. 682, 686 (1908) (explaining malice is "a wicked condition of the heart" and "a performed purpose to do a wrongful act, without sufficient legal provocation"); *Arnold v. State*, 309 S.C. 157, 169, 420 S.E.2d 834, 841 (1992) (stating one indicator of malice is to attempt to mislead police as to who committed the crime).  Thus, the trial court did not err in denying Covington's motion for directed verdict on this charge.

**AFFIRMED.**

**WILLIAMS, C.J., and MCDONALD and TURNER, JJ., concur.**